UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WENCHUN ZHENG, Ph.D.,

                          Plaintiff,

            v.                                         1:15-CV-1232 (TJM/CFH)

GENERAL ELECTRIC COMPANY, GE
TRANSPORTATION, GE POWER & WATER,
GE ENERGY STORAGE (GEMX
TECHNOLOGIES, LLC), RICHARD
BOURGEOIS, KIMBERLEY CRAVER,
TOM O'DONNELL, DOUGLAS AUSTIN,
MINESH SHAH, KATIE TRANT, and
KRISTEN CRISMAN,

                          Defendants.
_____

**APPEARANCES**:
Wenchun Zheng, Ph.D.
Plaintiff Pro Se
551 Crystalberry Ter.
San Jose, California 95129

**CHRISTIAN F. HUMMEL**
**U.S. Magistrate Judge**

## REPORT-RECOMMENDATION AND ORDER

      Plaintiff pro se Wenchun Zheng, Ph.D., commenced this action on October 15, 2015 by the filing of a complaint alleging discrimination, harassment, and retaliation on the basis of his age, race, color, and national origin, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 200e, eq seq., the Civil Rights Act of 1991, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. Dkt. No. 1 ("Compl."). Plaintiff also filed an application for In Forma Pauperis ("IFP") relief and a motion to appoint counsel. Dkt. Nos. 2, 4. Upon review of plaintiff's IFP

application, the undersigned concludes that he may properly proceed IFP.[1]

A. **Initial Review**

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action. As plaintiff is representing himself, the court is to consider his claims "liberally" and "interpret them 'to raise the strongest arguments that they suggest.'" Cold Stone Creamery, Inc. v. Gorman, 286 (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)).

1. **Plaintiff's Claims**[2]

Plaintiff, a 59-year-old naturalized citizen of the United States who is from China, contends that he faced discrimination, harassment, and retaliation on the basis of his age, race/color, and national origin in violation of Title VII and the ADEA. See Compl. at 37-45. Plaintiff began employment with GE Energy Storage on September 12, 2012

---

[1] Plaintiff is advised that, although his IFP application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[2] Citations to page numbers in the complaint reference the pagination generated by CM/ECF, not to the page numbers inserted by plaintiff.

2

as a Lead Engineer/Technologist "responsible for the mechanical design of the Battery Management System . . . for a mining vehicle battery system project." Id. at 4. Plaintiff was terminated on July 13, 2015. Id. at 5. Over the course of his employment, plaintiff filed three "integrity complaints" within the company as well as EEOC complaints. Id. at 30.[3]

In his complaint filed with this Court, plaintiff argues that, due to his national origin, race/color, and age, he was subjected to harassment, unequal terms of employment, and wrongful termination. See generally Compl. To the extent it can be determined, plaintiff contends that: (1) Trant denied him the opportunity to work remotely so that he could care for his son in California, forcing him to take unpaid FMLA time, despite the fact that she allowed similar relief to a white employee (Dkt. No. 6, 31-32); (2) Bourgeois (a) treated him differently from a white employee because he "back[ed]" the white employee who had lied about plaintiff's performance (Compl. at 1); (b) harassed him by purposely assigning him work that was intended for other engineers or was "impossible" to complete, and gave him additional assignments to make him "overloaded" (Compl. at 13, 15-20); (c) harassed him through negative reviews and "performance improvement plans" (Compl. at 5); (d) harassed him by pressuring him to add Bourgeois' name to plaintiff's patent application and make modifications (Compl. at 6-7, 10-11, 21); (e) issued him disciplinary letters out of retaliation and as a pretext for discrimination (Compl. at 21-22); (f) discriminated against him on the basis of his age when he "threatened" plaintiff by "yelling and screaming at

---

[3] Plaintiff received his right to sue letter from the EEOC on July 22, 2015. Compl. at 47-49.

3

[him] for no reason" (Compl. at 5, 8); (3) defendant Austin (a) harassed him by putting "inaccurate" and negative statements in plaintiff's performance review, and used the negative review as a pretext for discrimination (Compl. at 25-27); (b) treated him differently from other employees by writing that plaintiff needed to improve his working relationships in a performance review, but failing to give a similar review to two white employees who engaged in improper conduct (Compl. at 28-29); (c) assigned plaintiff inappropriate projects (Compl. at 29-30); (d) intentionally excluded him from meetings and discussions (Compl. at 30-31); (e) discriminated against him on the basis of his age and national origin when he "hid" a separation offer from plaintiff and "hinted" to plaintiff to resign (Compl. at 25, 31); and (f) treated him differently from other employees by refusing him "flex time" to care for his son in California (Compl. at 31-32); (4) defendant Craver (a) discriminated, harassed, and retaliated against plaintiff when she denied and "falsified" plaintiff's claims of harassment and hostile work environment against Bourgeois, and improperly "protected" Bourgeois, and (b) "intentionally defamed [his] reputation by distorting the truth of this case in [her] response" to his EEOC complaint and declined to revoke a negative "EMS review" (Compl. at 11-13, 19, 23). Plaintiff similarly contends that defendant Austin defamed him by distorting facts in a "2014 EMS review." Id. at 41.

It is unclear to the undersigned the specific discriminatory conduct plaintiff alleges defendants Shah, Crisman, and O'Donnell engaged in, and whether that alleged discrimination was on the basis of his age, race, and/or national origin. Liberally read, it appears that plaintiff's complaint argues that O'Donnell discriminated

4

against him, on what basis it is unclear, by finding plaintiff's complaints against Bourgeois to be unfounded. Compl. at 13-14. Plaintiff appears to argue that Shah discriminated against him by refusing to revoke a negative "EMS review[,]" and treated him differently by criticizing him in an e-mail, but not criticizing a white employee who "initiated the conflict." Id. at 26-28.[4] Plaintiff argues that Crisman, along with the individual defendants, "carried out and/or supported the wrongful acts described in this Complaint." Id. at 4. However, plaintiff has failed to provide sufficient factual detail for the undersigned to determine how, specifically, plaintiff alleges that Crisman "carried out or supported" the alleged wrongful acts.

Finally, plaintiff states that General Electric Company is an "unequal opportunity employer" because it requires new employees to sign an agreement that disputes would be resolved by Alternative Dispute Resolution ("ADR"), rather than by litigation. Compl. at 36-37. It also appears that plaintiff is arguing that General Electric Company, GE Transportation, GE Power & Water, and GE Energy and Storage are liable for discrimination on the basis of age, race/color, and national origin insofar as the corporate entity "refused" to mediate the EEOC complaints and "intentionally retaliated and defamed Plaintiff with the utmost resources because Plaintiff filed complaints with EEOC."[5] Id. at 14. Plaintiff further argues that GE "is liable for the willful harassment

---

[4] Plaintiff also states that unnamed individuals searched his computer "for the purpose of desperately trying to find something to accuse him of for further pretext to terminate him," and did so despite the fact that employees' computers are not generally searched until they leave employment with GE, yet plaintiff was employed at the time they searched his computer. See Compl. at 32.

[5] It appears the alleged defamation plaintiff attributes to the corporate defendants are the statements made in the EEOC response by Craver.

5

[of Bourgeois] because Plaintiff filed the integrity complains [sic] within the Company. GE was liable for the willful harassment since the harasser was supported by the Company although "'Retaliation is Prohibited' in many policies." Id. at 11. Plaintiff further appears to suggest, though does not list as a separate cause of action, that unidentified GE Power & Water employees failed to investigate his intergrity complaint as a form of retaliation for plaintiff's complaints filed with the EEOC and "GE ombudsman system." Id. at 30. Plaintiff also contends that "white supremacy is the historical culture of the General Electric Company[.]" Id. at 24.

2. **Claims against individual defendants under Title VII and ADEA**

First, it is well settled that Title VII and the ADEA "are directed toward employers, not individual natural persons who are not themselves employers, at least absent separate intentional misconduct." Bramesco v. Drug Computer Consultants, 834 F. Supp. 120, 123 (S.D.N.Y. 1993) (citing Miller v. Maxwell's Intern., Inc., 991 F.2d 583 (9th Cir. 1993). Thus, there is no claim under Title VII or the ADEA against individual employees or supervisors. Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015) (citation omitted); Guerra v. Jones, 421 F. App'x 15 (2d Cir. 2011). Therefore, it is recommended that all Title VII and ADEA claims against defendants Bourgeois, Craver, O'Donnell, Austin, Shah, Trant, and Crisman be dismissed with prejudice and without leave to amend.

However, individual liability may lie under New York State Human Rights Law, where the individual actually participates in conduct giving rise to discrimination, and

6

due to the "special solicitude" due to pro se litigants, the Court will assess plaintiff's claims as if they were brought under the New York State Human Rights Law ("NYSHRL"), pursuant to this Court's supplemental jurisdiction. See DiPetto v. U.S. Postal Serv., 383 F. App'x 102, 103 (2d Cir. 2010) (summary order) (citation omitted) ("[W]hile pro se complaints must contain sufficient factual allegations to meet the plausibility standard, we should look for such allegations by reading pro se complaints with 'special solicitude' and interpreting them to raise the 'strongest [claims] that they suggest."); see also Kercado-Clymer v. City of Amsterdam, 370 F. App'x 238, 242 n.1 (2d Cir. 2010) (noting that the District Court properly dismissed Title VII claims against individual supervisor, as individuals are not subject to liability under Title VII, but observing that individual liability may lie under the NYSHRL).

Under the NYSHRL, "individual liability attaches where an employee is shown to have an 'ownership interest or any power to do more than carry out personnel decisions made by others . . . essentially . . . the authority 'to hire or fire people.'" Pellegrini v. Sovereign Hotels, Inc., 740 F. Supp. 2d 344, 355 (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), abrog. on other grounds, Burlington Indust., Inc. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775 (1998). A plaintiff makes a prima facie discrimination case by demonstrating that he is (1) a member of a protected class, (2) was qualified for the position held, (3) suffered an adverse employment action, and (4) the circumstances surrounding that action give rise to an inference of discrimination. See Pelligrini, 740 F. Supp. 2d at 354 (citing Jackson v. New York City Trans., 348 F. App'x 666, 669 (2d Cir. 2009).

In order to determine whether this Court should allow plaintiff an opportunity to amend his complaint to see if he can state a cause of action pursuant to the NYSHRL against any or all of the individual defendants, it also must be determined whether, even if granted leave to amend, plaintiff would be able to state a claim. First, plaintiff's complaint contains no indication whether any of the individual defendants had the ability to hire or fire employees. Thus, even if plaintiff could otherwise make a claim under the NYSHRL, he has not provided sufficient information for the Court to determine whether such claims properly lie against the individual defendants.

Therefore, it is recommended that plaintiff's Title VII and ADEA claims be interpreted as if raised under the NYSHRL, and that he be granted an opportunity to amend his complaint to raise claims for individual liability under the NYSHRL to the extent he may be able to establish that any of the individual defendants alleged to have engaged in prohibited retaliatory or discriminatory conduct also had the authority to independently hire or fire.[6]

### 2. **Defamation Claim**

Plaintiff raises a claim for defamation against defendants Craver and Austin under Title VII. Id. at 41. A claim for defamation against non-governmental employees arises under New York State common law.

Plaintiff appears to base his defamation claim based on negative reviews and

---

[6] In making this recommendation, the undersigned offers no opinion whether plaintiff may be able to successfully plead such claims or that such claims could withstand a motion to dismiss or summary judgment.

improvement plans that he believes to have been based on false information. See Compl. at 41 ("Ms. Craver defamed Plaintiff in her response to Plaintiff's complaint with EEOC by distorting the facts and Mr. Austin defamed Plaintiff in the 2014 EMS review by distorting the facts.").

In order to state a claim for defamation under New York law, a plaintiff must demonstrate an "unprivileged publication" of this information to a third party. See, e.g., Lore v. City of Syracuse, 583 F. Supp. 2d 345, 383 (N.D.N.Y. 2008). Further, a plaintiff "must plead in [his] complaint the particular words giving rise to [his] claim." Id. (citing N.Y. C.P.L.R. 3016(a) (2008)). Thus, even if the undersigned were to construe the defamation claim as brought under New York State common law, "negative internal assessments cannot support a claim for defamation." Chimarev v. TD Waterhouse Investor Services, Inc., 99 F. App'x 259, 263 (2d Cir. 2004). Thus, insofar as plaintiff argues that Austin defamed him in an EMS review, as this appears to be an internal assessment, plaintiff has failed to demonstrate the "publication" element required. Accordingly, it is recommended that plaintiff's defamation claim against Austin be dismissed with prejudice. To the extent that plaintiff argues that Craver acted with malice by defaming him in a response to an unspecified EEOC complaint, plaintiff merely states that Craver "distorted the facts," but fails to provide the specific defamatory statements that were made. Accordingly, it is recommended that the defamation claim against Austin be dismissed, with prejudice and without leave to amend, and that the defamation claim against Craver be dismissed without prejudice, and plaintiff be granted leave to amend this defamation claim to assert the specific

9

defamatory statements allegedly made by Craver.

B. **Motion for Appointment of Counsel**

Plaintiff moves this Court for assignment of counsel. Dkt. No. 4. Prior to evaluating a request for appointment of counsel, a party must first demonstrate that he is unable to obtain counsel through the private sector or public interest firms. Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 173-74 (2d Cir. 1989) (citing Hodge, 802 F.2d at 61). Plaintiff indicates that he had retained counsel "for the mediation proposed with EEOC with the defendants," but provides that his attorneys "failed the negotiation with the respondents," "cost[] him a lot of money," and resulted in "unsatisfactory work." Id. at 1. He provides that he cannot afford to retain a new attorney. Id. Although it is suggested that plaintiff may be able to contact public interest groups to see if he could retain pro bono counsel, the undersigned will still proceed with consideration of his motion.

There is no bright-line test for a Court to determine whether counsel should be appointed on behalf of an indigent party. Hendricks v. Coughlin, 114 F.3d 390, 392-93 (2d Cir. 1997). However, a court should consider whether the indigent's position seems likely to be of substance. Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986)). If the claim meets this threshold requirement, the court should then consider:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact

> finder, the indigent's ability to present the case, the
> complexity of the legal issues and any special reason in that
> case why appointment of counsel would be more likely to
> lead to a just determination.

Id. (quotations omitted). This is not to say that all, or indeed any, of these factors are controlling in a particular case; rather, each case must be decided on its own facts. Velasquez v. O'Keefe, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing Hodge, 802 F.2d at 61).

Here, this action is at the earliest stages of litigation – plaintiff has just filed his complaint. It has yet to be determined whether his claims will proceed or which claims and defendants will remain, as this is a determination that must be reviewed by the assigned District Judge. Further, beyond the fact that this case is in its infancy, it does not appear that the issues that plaintiff raises are overly complex. Although it is possible that there will be conflicting evidence, implicating the need for cross-examination should this matter reach trial, "this factor alone is not determinative of a motion for appointment of counsel." Velasquez v. O'Keefe, 899 F. Supp. 972, 974 (N.D.N.Y. 1995). Therefore, the undersigned concludes that appointment of counsel is not warranted at this time, and plaintiff's motion is denied, without prejudice, and with right to renew at some future time.

### III. Conclusion

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP application (Dkt. No. 2) is **GRANTED**, and plaintiff

will be permitted to proceed in this matter IFP; and it is further

**ORDERED** that plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED, without prejudice** to renew, as discussed in this Report-Recommendation and Order; and it is

**RECOMMENDED** that all claims against the individual defendants for violations of Title VII and the ADEA be **DISMISSED, with prejudice**; and it is further

**RECOMMENDED** that plaintiff's discrimination claims against the individual defendants be interpreted as if raised under the New York State Human Rights Law; and that such claims be dismissed, without prejudice, and with an opportunity to amend to demonstrate whether any of the individual defendants had the authority required by the New York State Human Rights Law and, if so, the specific involvement the individuals had with the adverse actions and how the adverse actions amounted to discrimination on the basis of his membership in a protected class; and it is further

**RECOMMENDED** that plaintiff's defamation claims be read as if brought under New York State common law, and that the defamation claim against Austin be **DISMISSED, with prejudice** for failure to state a claim; and the defamation claim against defendant Craver be **DISMISSED, without prejudice**, and plaintiff be afforded an opportunity to amend his complaint in an attempt to cure the defects in this cause of action, as indicated in the above Report-Recommendation and Order; and it is further

**RECOMMENDED** that plaintiff's Title VII claims against General Electric Company, GE Transportation, GE Power & Water, and GE Energy Storage (GMEX Technologies, LLC), proceed; and it is further

12

**RECOMMENDED** that, if the District Court Judge adopts this Report-Recommendation and Order in full, plaintiff be granted **THIRTY (30)** days from the entry of the District Court Judge's Order to file an amended complaint in accordance with the specifications set forth in this Report-Recommendation and Order and with any additional requirements or directions that may be set forth by the District Judge; and it is

**ORDERED** that the Clerk of the Court provide plaintiff with a copy of this Report-Recommendation and Order in accordance with the Local Rules;

Pursuant to 28 U.S.C. § 636(b)(1), parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

Dated: October 26, 2015
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge