**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

WENCHUN ZHENG, Ph.D.,

                                Plaintiff,

        v.

GENERAL ELECTRIC COMPANY, GE
TRANSPORTATION, GE POWER & WATER,
GE ENERGY STORAGE (GEMX
TECHNOLOGIES, LLC), RICHARD
BOURGEOIS, KIMBERLY CRAVER,
TOM O'DONNELL, DOUGLAS AUSTIN,
MINESH SHAH, KATIE TRANT, and
KRISTEN CRISMAN,

                               Defendants.

1:15-CV-1232
(TJM/CFH)

---

**APPEARANCES**:
Wenchun Zheng, Ph.D.
Plaintiff Pro Se
551 Crystalberry Ter.
San Jose, California 95129

**CHRISTIAN F. HUMMEL**
**U.S. Magistrate Judge**

## REPORT-RECOMMENDATION AND ORDER

### I. **Background**

Plaintiff <u>pro se</u> Wenchun Zheng, Ph.D., commenced this action on October 15,

2015 by the filing of a complaint alleging discrimination, harassment, and retaliation on

the basis of his age, race, color, and national origin, pursuant to Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. 200e, eq seq.; the Civil Rights Act of 1991,

42 U.S.C. 1981(a); and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§ 621, et seq.  Dkt. No. 1 ("Compl.").   In a Report-Recommendation and Order, the

undersigned (1) granted plaintiff's In Forma Pauperis application; (2) denied plaintiff's motion for appointment of counsel with leave to renew; (3) recommended that all Title VII and ADEA claims against the individual defendants be dismissed with prejudice; (4) recommended that plaintiff's claims for discrimination alleged against the individual defendants pursuant to Title VII  be interpreted as if raised under the New York State Human Rights Law ("NYSHRL"), and that such claims be dismissed without prejudice and with opportunity to amend; (5) recommended that plaintiff's defamation claims be interpreted as if raised under New York State common law, that the defamation claim against defendant Austin be dismissed with prejudice, and that the defamation claim against defendant Craver be dismissed without prejudice and with opportunity to amend; (6) recommended that plaintiff's Title VII claims against General Electric Company, GE Transportation, GE Power & Water, and GE Energy Storage (GMEX Technologies, LLC) proceed; and (7) recommended that, should the Court adopt the Report-Recommendation, plaintiff be given thirty days from the entry of the Court's Order to file an amended complaint.  See Dkt. No. 5.

On November 7, 2015, plaintiff filed an amended complaint.  Dkt. No. 7.  Plaintiff did not file objections to the Report-Recommendation and Order.  On November 20, 2015, Senior District Judge Thomas J. McAvoy adopted the Report-Recommendation and Order.  Dkt No. 10.  The Decision and Order "offer[ed] no opinion on the legal viability of any of the claims asserted in the amended complaint."  Id. at 2.  Presently pending before the Court is a review of plaintiff's amended complaint pursuant to 28

U.S.C. § 1915(e).[1]

## II. **Review of Amended Complaint**

In a fifty-page[2] amended complaint, plaintiff presents what appears to be an identical statement of facts to that set forth in his original complaint. <u>See</u> Dkt. Nos. 1, 7. The discernable differences between the original and amended complaint appear only in the section of the amended complaint listing causes of action and are as follows, plaintiff: (1) omitted, insofar as alleged against the individual defendants, his claims of intentional discrimination and retaliation pursuant to Title VII and 42 U.S.C. § 1981, realleging these claims only against GE Company; (2) omitted his ADEA claims against the individual defendants, realleging only as against GE Company; (3) omitted his intentional discrimination and retaliation claims alleged against Bourgeois and against all defendants pursuant to 42 U.S.C. § 1981, realleging these claims only as against "GE Company"; (4) omitted his "malice defamation and retaliation" claims pursuant to Title VII and section 1981 against Craver and Austin; (5) omitted his claim for harassment against Bourgeois pursuant to 42 U.S.C. § 1981; (6) added a claim for discrimination against "all defendants" under the NYSHRL;(7) added claims for harassment against defendant Bourgeois purportedly pursuant to New York State Civil Rights Law § 79-n and New York State Penal Law § 240.25; and (8) amended his claim for "unequal opportunity employer" in violation of Title VII and section 1981 to remove

---

[1] Unpublished decisions referenced within this Report-Recommendation and Order are attached hereto.

[2] The undersigned is not including the attached exhibits in this page number calculation. <u>See</u> <u>generally</u> Dkt. No. 7.

defendants GE Transportation, GE Power & Water, and GE Energy Storage (GEMX Technologies, LLC), realleging only against defendant GE Company.  <u>See</u> Dkt. Nos. 1, 7.

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that  . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed R. Civ. P").  Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, <u>inter alia</u>, "a short and plain statement of the claim showing that the pleader is entitled to relief."  <u>See</u> FED. R. CIV. P. 8(a)(2).  At the pleadings stage of the proceeding, a court must assume "all well-pleaded, nonconclusory factual allegations in the complaint to be true."  <u>Kiobel v. Royal Dutch Petroleum Co.</u>, 621 F.3d 111, 124 (2d Cir. 2010), aff'd, ___ U.S.___, 133 S.Ct. 1659 (2013).  Although the pleading standard employed in reviewing discrimination cases is "somewhat less settled," generally, "while a discrimination complaint need not allege each element of a prima facie case of discrimination to survive a motion to dismiss,[3] <u>see</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 510 (2002) . . . it must at a minimum assert non-conclusory factual matter sufficient to "'nudge[] [its] claims' . . . across the line from conceivable to plausible' to proceed."

---

[3] Although the Court is not reviewing the complaint on a motion to dismiss, the plausibility standard still requires that a plaintiff "state a claim that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  Further, although the plausibility standard "does not require detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

E.E.O.C. v. Port Auth. of N.Y. and N.J., 768 F.3d 247, 253-54 (2d Cir. 2014) (quoting

Iqbal, 556 U.S. at 680; Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d

Cir. 2015).  Ultimately, a plaintiff need not plead a prima facie case of discrimination at

this early stage because the prima facie standard under the burden-shifting framework

of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),[4] "is an evidentiary

standard, not a pleading requirement." Salters v. Hewitt-Young Elec., LLC, 15-CV-6040,

2015 WL 4751026, at *2 (W.D.N.Y. Aug. 11, 2015).  Still, the discrimination claim "must

be *facially plausible* and must give fair notice to the defendant[] of the basis for the

claim." Ortiz v. Standard & Poor's, 10 Civ 8490 (NRB), 2011 WL 4056901, at *2

(S.D.N.Y. Aug. 29, 2011) (emphasis in original).


### A.  New York State Human Rights Law

In the October 26, 2015 Report-Recommendation and Order, as adopted by the

District Judge, the undersigned interpreted plaintiff's discrimination claims against the

individual defendants as if brought under the New York State Human Rights Law

("NYSHRL"), and allowed plaintiff the opportunity to amend his complaint to allege

whether the individual defendants had the ability to "do more than carry out personnel

decisions made by others" to render them subject to the NYSHRL.  Dkt. No. 5 at 12.

Rather than amend his complaint in this manner, plaintiff alleged general claims for

---

[4] "The Supreme Court in McDonnell Douglas . . . made clear that the employee must first establish a prima facie case.  Once he does so, the burden shifts to the employer to show some legitimate non-discriminatory reason for the alleged mistreatment.  The employee must then be afforded an opportunity to prove that the employer's explanation of its conduct was merely pretextual." Choudhury v. Polytechnic Institute of N.Y., 735 F.2d 38, 44 (2d Cir. 1984) (citing McDonnell Douglas, 411 U.S. 792 (1973).

"unlawful discriminatory practice" in violation of the NYSHRL against "all defendants."
Dkt. No. 7 at 42.

Although plaintiff has declined to allege whether any of the individual defendants had ownership interest or the independent ability to hire or fire in order to subject them to liability under section 296(1) of the New York Executive Law, the Second Circuit has held that under section 296(6), a supervisor/manager or a non-supervisory employee, although lacking the independent ability to hire or fire, could be held independently liable if the employee "actually participated" in the underlying discriminatory conduct. N.Y. EXEC. LAW § 296(6) (providing that it is unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NYSHRL], or attempt to do so."); Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004); Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), abrogated on other grounds Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998); Reed v. Garden City Union Free Sch. Dist., 987 F. Supp. 2d 260, 266 (E.D.N.Y. 2013) (declining summary judgment on section 296(6) claim against a supervisor where the plaintiff alleged that she complained to her supervisor about discriminatory conduct, but the supervisor never addressed the complaints, then gave her a negative review, and eventually terminated her).

As there exists some disagreement among both state and federal courts regarding the Second Circuit's interpretation of section 296(6) and whether it imposes individual liability on individual defendants, a discussion of the Second Circuit precedent is warranted.  In Tomka v. Seiler Corp., the Second Circuit determined that Patrowich v. Chemical Bank, 63 N.Y. 2d 541, 542 (N.Y. 1984), which held that there could be no individual liability for discrimination unless the individual had ownership interest or the

authority to do more than carry out the personnel decisions of others, did not apply to claims under section 296(6). 66 F.3d at 1317. In so holding, the Tomka Court concluded that managers or supervisors, even if lacking ownership interest or the ability to make independent personnel decisions, could be considered "employers" under section 296(6) and be held individually liable if they aided or abetted discrimination by actually participating in the discriminatory conduct. Tomka, 66 F.3d at 1317; see also Negussey v. Syracuse Univ., 95-CV-1827, 1997 WL 141679, at *5 (Mar. 24, 1997). Tomka further held that a nonsupervisory coworker could be also held individually liable if he or she "actually participate[d] in conduct giving rise to a discrimination claim." Id. at 1317. In Feingold, the Second Circuit reaffirmed its holding in Tomka, acknowledging that, although "state courts are not in unanimous agreement with this aspect of our decision in Tomka, the majority of the courts that have considered the issue have affirmed the existence of a cause of action against individual defendants under the aid-or-abet provision of the NYSHRL." 366 F.3d 138, 158 at n.19.

It is clear that there is some disagreement among the state Appellate Divisions[5] over whether the Second Circuit's holding in Tomka – which allows for individual liability against those who actually participated or aided or abetted in discriminatory conduct –

---

[5] See Steadman v. Sinclair, 223 A.D.2d 392 (1st Dep't 1996); Trovato v. Air Express Int'l, 238 A.D.2d 333, 334 (N.Y. App. Div. 1997); Murphy v. ERA United Realty, 251 A.D.2d 469 (N.Y. App. Div. 1998) ("[T]he broad language in Trovato should not be read to rule out a cause of action pursuant to Executive Law 296(6) against a coemployee who is alleged to have actively abetted the employer," clarifying that, in Trovato, it was not alleged that the coemployees joined the employer or owner in its discriminatory conduct, and concluding that "[w]ithout any apparent involvement by the employer or owner," there could be no liability under section 296(6)).

is a proper interpretation of section 296(6).[6]  As the New York State Court of Appeals

has yet to clarify whether section 296(6) permits any individual liability, there are some

courts in this Circuit, including within this District, that have either: (1) disagreed with

Tomka's holding but reluctantly applied it, or (2) declined to exercise supplemental

jurisdiction over the section 296(6) claims due to the uncertainty of the state law.  See

Kaiser v. Highland Cent. Sch. Dist., 08-CV-436 (LEK/RFT), 2008 WL 5157450, at *2

(N.D.N.Y. Dec. 8, 2008) ("Given that New York courts are split on this issue, the Court

declines to exercise supplemental jurisdiction over the state law claim); Donlon v. Board

of Educ. of Greece Cent. Sch. Dist., 06-CV-6027T, 2007 WL 4553932, at *6 (W.D.N.Y.

Dec. 20, 2007) (declining to exercise supplemental jurisdiction over section 296(6)

claims against individual defendants, contending that New York courts are "split" on the

issue whether individuals – either supervisors or coworkers – could be subject to liability

under section 296(6); Hockeson v. New York State Office of Gen. Svcs., 188 F. Supp.

2d 215, 222 (N.D.N.Y. 2002) (noting the "unsettled nature of the state of the law in New

York regarding § 296(6), especially the repudiation by many New York courts of the

Tomka holding . . ." and declining to exercise supplemental jurisdiction over the claim);

Bush v. Raymond Corp., 954 F. Supp. 490, 497, n.4 (N.D.N.Y. 1997) (noting

disagreement in state courts over Tomka's holding, but concluding that "Tomka is the

law in this Circuit, and this Court is constrained by its holding.").

---

[6]  As will be discussed, the points of disagreement or uncertainty generally fits into three
categories: (1) doubt over whether section 296(6) allows for *any* individual liability; (2) accepting that
section 296(6) allows for individual liability against managers/supervisors, but doubting whether it allows
for liability against coworkers; and (3) disagreement over whether section 296(6) allows for liability over
employees who aid or abet their own discriminatory conduct.  See infra at 8-12.

Although the undersigned is understanding of the hesitancy of some courts in this Circuit, and judges within this District, to exercise supplemental jurisdiction to reach individual liability claims under section 296(6), under the Second Circuit law as it stands, such claims are viable, and this Court is constrained to follow Second Circuit precedent.  See Bennett v. Progressive Corp., 225 F. Supp. 2d 190, 214 (N.D.N.Y. 2002); see also Anand v. New York State Dept. of Taxation and Fin., 10-CV-5142 (SJF/WDW), 2012 WL 2357720, at *10 (E.D.N.Y. 2012).  The undersigned agrees with the following statement of the current Second Circuit's position of section 296(6), which was clearly laid out by Senior District Judge McAvoy in Lamere v. New York State Office for the Aging:

> The Second Circuit has determined that a supervisor is an 'employer' within the meaning of the NYSHRL, and subject to personal liability, if the supervisor 'actually participates in the conduct giving rise to [the] discrimination.'"  Feingold, 366 F.3d at 157 (quoting Tomka, 66 F.3d at 1317).  Further, the Second Circuit has recognized personal liability for a co-worker who "actually participate[s] in the conduct giving rise to a discrimination claim" irrespective of whether that co-worker had the authority to either hire or fire the Plaintiff.

03-CV-356, 2005 WL 1174068, at *15 (N.D.N.Y. Apr. 27, 2005) (quoting Feingold, 366 F.3d at 157-58) (additional internal quotation marks omitted).

Even accepting that section 296(6) allows for individual liability, further unsettled is whether an individual can be held liable for aiding and abetting his or her "own" discriminatory conduct under section 296(6) – permitting liability against the "principal actor" – as the Second Circuit has "not definitively addressed" this question.  Alex v. General Elec. Co., 1:12-CV-1021 (GTS/CFH), 2014 WL 2510561, at *2 (N.D.N.Y. June 24, 2014) (declining to exercise supplemental jurisdiction over plaintiff's Section 296

claims, and noting that "it appears that the majority of district court cases to have addressed the issue have answered that question [whether an individual can aid or abet his or her own conduct] in the negative.") (citing cases).[7] Some decisions have held that, to establish any section 296(6) liability against individual supervisor or employee, a plaintiff must first establish the liability of the employer. See Alexander v. Westbury Union Free Sch. Dist., 829 F. Supp. 2d 89, 115 (E.D.N.Y. 2011) (citing Pellegrini v. Sovereign Hotels, Inc., 740 F. Supp. 2d 344, 356 (N.D.N.Y. 2010) (holding that, under any section 296(6) claim, "a plaintiff cannot prevail against an individual on [his or] her [NYSHRL] claims unless [he or] she can first establish the liability of [his or] her employer," because "'[i]t is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting" and noting that such a "situation" was "not considered by Tomka."); Piston v. County of Monroe, 08-CV-6435P, 2012 WL 4490652, at *6 (W.D.N.Y. Sept. 27, 2012) (citing Lewis v. Triborough Bridge and Tunnel Auth., 97-CV-067(PKL), 2001 WL 46986, at *1 (S.D.N.Y. Jan. 18, 2001) aff'd 31 F. App'x 746 (2d Cir. 2002); Moran v. Fashion Inst. of Tech., 00-Civ-1275 (KMW/RL), 2002 WL 31288272, at *9 (S.D.N.Y. Oct. 7, 2002). Others, including the Eastern District of New York in Johnson v. County of Nassau, have held that

> [r]egardless of whether other employees contributed to the

---

[7] Some decisions have conflated the question whether section 296(6) allows for liability against an employee for aiding and abetting his own conduct, regardless of the involvement of the employer or a coworker, with two related, yet distinct questions: (1) whether section 296(6) allows for *any* individual liability, and (2) accepting that 296(6) allows for individual liability for defendants who aid or abet the discriminatory conduct of their employer or a coworker, does it permit liability against one who is the primary actor? The undersigned wishes to clarify that there are various degrees of uncertainty surrounding individual liability under 296(6).

discrimination, under <u>Tomka</u>, a plaintiff may succeed in a claim under the NYSHRL by showing the employer's entity having encouraged, condoned, or approved the discriminatory conduct of a sole employee – the same discriminatory conduct when then, perhaps 'circular[ly]', proves individual liability under the aiding and abetting provision of 296(6).

<u>Johnson</u>, 82 F. Supp. 3d at 535; <u>cf.</u> <u>Negussey</u>, 1997 WL 141679, at *5 (quoting <u>Totem Taxi, Inc. v. New York State Human Rights Appeal Bd.</u>, 65 N.Y. 2d 300, 305 (N.Y. 1985) ("What is the law with respect to imputing employee conduct in derogation of the Human Rights Law to the employer? Respondeat superior has been squarely rejected. Instead, 'the employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it.'")). Under the <u>Johnson</u> rationale, "a defendant may be held liable for aiding and abetting allegedly unlawful discrimination by [his or] her employer even where [his or] her actions serve as the predicate for the employer's vicarious liability." <u>Conklin v. County of Suffolk</u>, 859 F. Supp. 2d 415, 436 (E.D.N.Y. 2012); <u>Mahar v. Alliance Mortgage Banking Corp.</u>, 650 F. Supp. 2d 249, 262 (E.D.N.Y. 2009).

   <u>Johnson</u>, along with other decisions, have reached further to hold that an employee can be liable even where the NYSHRL discrimination claim against the employer has been dismissed. <u>See</u>, <u>e.g.</u>, <u>Johnson</u>, 82 F. Supp. 3d at 537 (permitting section 296(6) claim against individual the defendants to proceed even though discrimination claim against the employer was procedurally barred); <u>Boston v. Taconic Mgmt. Co.</u>, 12-CV-4077 (ER), 2014 WL 4184751, at *2 n.9 (S.D.N.Y. Aug. 22, 2014) ("[A]ssuming that the alleged discrimination can be imputed to [the defendant employer] as [the p]laintiff's employer, [the individual defendant] can be held liable for aiding and

11

abetting regardless of whether his actions form the basis for [the defendant employer's] liability in the first instance."). At least one court following this line of reasoning has limited this theory, declining to apply it in cases where the employer cannot be held liable for the discriminatory conduct due to a non merits-based reason, such as qualified immunity. See Pratt v. Indian River Cent. Sch. Dist., 803 F. Supp. 2d 135, 149 (N.D.N.Y. 2011) (noting that, "apparently the law in the Circuit is still that 'a defendant who actually particip[ates] in the conduct giving rise to a discrimination claim may be held personally liable under [§ 296(6), the aiding and abetting provision,]' even when the employer has been found not liable for discrimination[,]" but concluding that such logic should not apply where the NYSHRL claim against the employer has been dismissed, either on the merits or because of qualified or absolute immunity) (quoting Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP, 332 F. Supp. 2d 592, 598 (S.D.N.Y. 2004)).

As Alexander rationally sets forth, "§ 296 is, in essence, an *employment* discrimination statute, not an individual liability statute, even though individuals can, as noted, be liable under some circumstances." Alexander, 829 F. Supp. 2d at 116; see also Pellegrini, 740 F. Supp. 2d at 356. "Importantly, since it is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting, a plaintiff cannot prevail against an individual on her state claims unless she can first establish the liability of her employer." Pellegrini, 740 F. Supp. 2d at 356. The undersigned agrees with this logic and concludes that the individual defendant must be shown to have aided or abetted the discriminatory conduct of an employer or coworker to allow for liability under section

12

296(6), and, although it may be the employee's own conduct that "circularly" serves as the basis for the employer's liability, <u>Johnson</u>, 82 F. Supp. 3d at 538, if the employer is found not liable for violating the NYSHRL, the individual employee cannot be held liable either.  Thus, the undersigned must first assess whether plaintiff's employer plausibly could be held liable for discrimination before the liability of the individual defendants can be reviewed.

For liability for aiding and abetting under a section 296(6) claim, a plaintiff must demonstrate: (1) "'that []he [or she] engaged in conduct protected by the NY[S]HRL; (2) that there is a causal connection between the protected conduct and the alleged [violations] of the NY[S]HRL; and (3) that [the defendant] 'actually participated' in the discrimination.'" <u>Wright v. City of Syracuse</u>, 5:10-CV-661 (GTS/TWD), 2014 WL 1293527, at *14 (N.D.N.Y. Mar. 31, 2014) (quoting <u>Beattie v. Guilderland Cent. Sch. Dist.</u>, 124 F. Supp. 2d 802, 805 (N.D.N.Y. 2000); <u>Vosburgh v. American Nat. Red Cross</u>, 08-CV-653 (LEK/TWD), 2014 WL 4826688, at *13 (N.D.N.Y. Sept. 29, 2014).   A supervisor's failure to investigate claims of discrimination or take remedial action, as well as the supervisor's termination of an individual "on an impermissible basis," could result in individual liability.  <u>Pellegrini</u>, 740 F. Supp. 2d at 356 (quoting <u>Feingold</u>, 366 F.3d at 158).  Although, as discussed above, it appears that, under the NYSHRL, an employer cannot be held liable for the conduct of its employee under a respondeat superior theory, a supervisor's conduct can be imputed on the employer 'if the employer became a party to [the discriminatory conduct] by encouraging, condoning, or approving it."  <u>Negussey</u>, 1997 WL 141679, at *5 (quoting <u>Totem Taxi</u>, 65 N.Y.2d at 305; <u>see also Stucky v. Wal-mart Stores, Inc.</u>, 02-CV-6613 CJS(P), 2005 WL 2008493, at *8

(W.D.N.Y. Aug. 22, 2005). "The New York courts 'require the same standard of proof for claims brought under section 296 of the Human Rights Law as for those brought under Title VII . . . .'" Lamere, 2005 WL 1174068, at *15 (quoting Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998), abrogated in part on other grounds Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)); McDonnell Douglas, 411 U.S. at 802. However, as noted supra, a plaintiff need not plead a prima facie case pursuant to the McDonnell-Douglas framework at the initial stage of litigation; instead, "'what must be plausibly supported by facts alleged in the complaint is that the plaintiff was a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" Dawson v. New York City Trans. Auth., 14-CV-4315, ___ F. App'x ___, 2015 WL 5438790, at *2 (2d Cir. 2015) (quoting Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015)).

As discussed, to assess whether plaintiff may proceed with claims against the individual defendants pursuant to section 296(6), the Court must determine whether plaintiff has plausibly pleaded his employer's liability, as there can be no individual liability without liability of the employer for its own discriminatory conduct or its act of aiding or abetting the proscribed conduct of a supervisor. See Alexander, 829 F. Supp. 2d at 115. Plaintiff alleges a violation of the NYSHRL "through GE Defendants' unlawful harassment, bullying, retaliation and wrongful termination and protect[ion of] GE Defendants' unlawful discriminatory acts by denying the facts with the single word 'UNFOUND' [sic] as well as or [sic] distorting the truth, as described in this complaint." Dkt. No. 7 at 42. Plaintiff's sixth cause of action states that GE Company violated the

14

NYSHRL by protecting the "unlawful discriminatory acts" of "GE Defendants," defined by plaintiff as defendants Craver, Bourgeois, Austin, Trant, and Shah.  See Dkt. No. 7 at 3, 42.  In the facts section of the amended complaint, plaintiff also provides that he repeatedly made complaints about defendant Bourgeois' allegedly discriminatory conduct, but that GE Company failed to sufficiently address it.  Dkt. No. 7 at 9, 13-14.

Although inartfully pleaded, it appears plaintiff is contending that GE Company is liable for its inaction – its failure to properly investigate claims of discrimination by defendant Bourgeois and others, despite having knowledge of the employees' allegedly discriminatory conduct through plaintiff's multiple filings of both internal integrity complaints and EEOC complaints – or outright its approval or encouragement of such conduct.  Dkt. No. 7 at 24, 30.  Further, he suggests that GE Company's acts or omissions contributed to creating a hostile work environment.  For example, plaintiff pleaded that GE Company intentionally harassed him and condoned Bourgeois' conduct by failing to proceed with his patent application and refusing to issue him a $1000 reward.  Dkt. No. 7 at 21.  Condonation, which includes "calculated inaction, by an employer of an employee's discriminatory acts forms a basis of liability under section 296(6) of the NYSHRL."  Johnson, 82 F. Supp. 3d at 537 (citing State Div. of Human Rights on Complaint of Greene v. St. Elizabeth's Hosp., 66 N.Y.2d 684, 687 (N.Y. 1985).  Plaintiff also contends that GE Company, through its employees, discriminated against him by refusing to revoke a negative "EMS [Employee Management System] review."  Dkt. No. 7 at 5, 23.  In addition, plaintiff suggests that GE Company also discriminated, through its employees, when they searched his computer and accused him of "theft of GE data" as a pretext to terminate him, suggesting that the termination

15

was for reasons impermissible under the NYSHRL.  Dkt. No. 7 at 33-35.  Furthermore,

plaintiff's contention that (1) Bourgeois yelled at him, assigned him inappropriate and

excessive workloads, and repeatedly approached him to harass him, and (2) that Austin

intentionally excluded him from meetings and assigned him inappropriate work that was

intended to harass him and lead him to resign, suggests that plaintiff is attempting to

allege a claim for a hostile work environment.  See Van Zant v. KLM Royal Dutch

Airlines, 80 F.3d 708, 715 (2d Cir. 1996) (holding that, to prevail on a hostile work

environment claim, a plaintiff must demonstrate "(1) that [his] workplace was permeated

with discriminatory intimidation that was sufficiently severe or pervasive to alter the

conditions of [his] work environment, and (2) that a specific basis exists for imputing the

conduct that created the hostile work environment to the employer.").

Although the undersigned is not concluding that plaintiff will or will not be able to

plead a prima facie discrimination claim or that the claim would survive a well-pleaded

dispositive motion,[8] at this early stage, plaintiff has pleaded enough to plausibly suggest

GE Company's discriminatory intent.  Therefore, undersigned will next assess whether

plaintiff has plausibly pleaded sufficient factual support for whether the individual

defendants may be held individually liable under section 296(6)'s for actually

participating in discriminatory conduct of the employer or other employees.

Here, plaintiff has presented sufficient evidence for a rational factfinder to

conclude that the individual defendants – excepting defendant Crisman, O'Donnell, and

---

[8] Based on the undersigned's review of the case law, should plaintiff be unable to successfully prove his employer's liability, he will be unable to proceed on his claims against the individual employees for aiding and abetting under 296(6).  See, e.g., Conklin, 859 F. Supp. 2d at 437.

Craver, as will be discussed below – actually participated in the conduct giving rise to his discrimination claim, in violation of NYSHRL under the "aidor and abettor" theory. Although plaintiff's sixth cause of action states that it is against "all defendants," plaintiff fails to allege any facts to support to how defendant Crisman violated the NYSHRL. He also has not alleged facts to provide a basis for his claim that defendant O'Donnell violated the NYSHRL. To the extent it can be discerned, as to the remaining individual defendants, plaintiff alleges that: (1) defendant Bourgeois (a) harassed him and acted in a retaliatory manner by assigning him inappropriate work tasks and repeatedly approaching him with the intent to harass and frustrate him, despite being informed that he was not to be alone with plaintiff, and (b) treated him differently from, or less favorably than, white employees (Dkt. No. 7 at 6, 8, 11-13, 18-20, 22); (2) defendant Trant (a) treated him differently from other employees due to his race and/or national origin insofar as she denied his request for "flex time," but permitted flex time to another employee; (b) failed to properly address or remedy Austin and Shah's discriminatory conduct, and (c) discriminated against him by refusing to revoke a negative EMS review (Dkt. No. 7 at 23, 28, 31-33); (3) defendant Shah (a) refused to revoke a negative EMS review, and (b) treated him differently from another employee by criticizing his "non professional behavior" but declining to criticize another employee who initiated the conflict (Dkt. No. 7 at 26, 28); (4) defendant Austin (a) created a hostile work environment by: (i) intentionally excluding him from meetings and activities, and (ii) assigning him inappropriate projects and pressuring him to complete projects with unreasonable deadlines; (b) treated him differently from other employees by (i) denying his remote work request, (ii) criticizing him by giving him a rating of "development

17

needed," but declining to criticize another employee for the same conduct, and (iii) adding to plaintiff's "PIP" that he needed to improve his "inclusiveness and behavior problems" but that plaintiff "believed" that two white employees who engaged in a dispute with plaintiff did not have this added to their "PIPs"; (c) intentionally concealed a separation offer due to plaintiff's national orientation and age; and (d) refused to change a negative or "inaccurate" review, despite plaintiff's completing all work to Austin's satisfaction[9] (Dkt. No. 7 at 25-26, 28-32); and (5) defendant Craver (a) failed to fully investigate his claims of discrimination, (b) "distort[ed] the truth" in her EEOC position statement as retaliation, and (c) refused him a transfer to another position or location which would allow him to be removed from other employees' discriminatory conduct (Dkt. No. 7 at 12, 14).

Should plaintiff be able to successfully demonstrate discrimination in violation of the NYSHRL on behalf of GE Company, it appears that plaintiff may be able to plead individual liability against Bourgeois under section 296(6). Plaintiff argues that Bourgeois actually participated in the discriminatory conduct as discussed above. Plaintiff does not explicitly allege that defendant Bourgeois aided and abetted the discriminatory conduct of GE Company, as is required for liability under 296(6), but it appears that plaintiff may be able to demonstrate individual liability against Bourgeois

---

[9]  Insofar as plaintiff's claims may be interpreted as a claim for defamation, this Court acknowledges that the defamation claim against Austin was dismissed with prejudice, as internal annual reviews cannot be subject of a defamation claim. See Dkt. Nos. 5, 10. Although plaintiff alleged in his original complaint that the cause of action was "malice defamation," Dkt. No. 1 at 41, which can be an exception to this general rule regarding internal reviews, plaintiff failed to plead any facts suggesting that the review was written with malice. In raising this claim again in his amended complaint, because plaintiff has again failed to set forth any details to support that the annual review was untrue or written with malice, the Court need not reassess this claim insofar as it can be read as realleging a claim for defamation against defendant Austin.

under the "circular" theory set forth in <u>Johnson</u> – that (1) Bourgeois engaged in discriminatory conduct, (2) GE Company condoned or approved of the discriminatory conduct, rendering it liable, and (3) Bourgeois then, albeit "circularly," aided and abetted GE Company's conduct.[10] <u>Johnson</u>, 82 F. Supp. 3d at 535. Further, plaintiff arguably pleads hostile work environment. A racially hostile work environment claim under New York law "requires a showing that (1) the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." <u>Alfano v. Costello</u>, 294 F.3d 365, 374 (2d Cir. 2002) (quoting <u>Perry v. Ethan Allen, Inc.</u>, 115 F.3d 143, 149 (2d Cir. 1997). This Circuit has held that "the assignment of 'an excessive workload' as a result of 'discriminatory intent,' can be an adverse employment action because it is 'more disruptive than a mere inconvenience of job responsibilities.'" <u>Vega</u>, 801 F.3d at 88.

Plaintiff has plausibly alleged that Austin actually participated in discriminatory which lead to the creation of a hostile work environment – intentionally excluding him from meetings, assigning him work tasks with the intent to harass him, giving him an inaccurate and negative review, and treating him differently from other employees. Dkt. No. 7 at 25-26, 28-32. Read liberally, plaintiff has plausibly contended that GE Company condoned or aided defendant Austin's discriminatory conduct, in part because plaintiff complained of Austin's conduct and proper steps were not taken to

_____

[10] Plaintiff states that Bourgeois was his manager or supervisor. Dkt. No. 7 at 15, 42; <u>Negussey</u>, 1997 WL 141679, at *5 (an employer can be liable under respondeat superior if it condoned/supported discriminatory conduct of supervisory employee).

remedy it.  See Dkt. No. 7 at 30; McCall v. Genpak, LLC, 13-CV-1947 (KMK), 2015 WL
5730362, at *10 (S.D.N.Y. Sept. 30, 2015) (holding the NYSHRL provides for a cause
of action for race-based employment discrimination based on a hostile work
environment) (citation omitted).  Plaintiff provides that Austin was his "manager," which
would permit for GE Company's respondeat superior liability if it is determined that GE
Company condoned, approved, and/or encouraged Austin's discriminatory conduct.
Dkt. No. 7 at 42; Negussey, 1997 WL 141679, at *5.  Like with defendant Bourgeois,
discussed supra, under the Johnson theory, plaintiff may be able to demonstrate liability
if he can show that GE Company condoned Austin's conduct.  Johnson, 82 F. Supp. 3d
at 535.  Thus, plaintiff has at least plausibly pleaded that Austin aided and abetted his
employer's discrimination to permit a claim for individual liability under section 296(6) to
continue.

Plaintiff alleges that Shah treated him differently from other employees  by
criticizing him but failing to criticize a white employee for initiating certain unprofessional
conduct.  Dkt. No. 7 at 26, 28.  Similarly, plaintiff plausibly alleges that Trant aided and
abetted discriminatory conduct of her employer and other employees insofar as he
contends that she treated him differently from another employee by denying his flex
time request, while granting it to the other employee, and failing to address or help
resolve a conflict initiated by another employee.  Id. at 28.  Under the Johnson theory,
should plaintiff be able to demonstrate that Shah and Trant's conduct was
discriminatory, and be able to impute this conduct onto GE Company for aiding and
abetting their discriminatory conduct, plaintiff has at least plausibly pleaded sufficient
factual support to allow his claims of individual liability under 296(6) to proceed.

Plaintiff alleges that Craver discriminated against him in violation of the NYSHRL by "distorting the truth"[11] or intentionally providing incorrect facts in her position statement in response to his January 2014 EEOC complaint. Dkt. No. 7 at 14-16, 19, 21, 48. He also suggests that Craver's "distortion" in her May 2014 position statement was an act of retaliation for either (1) his filing an integrity complaint Bourgeois' harassing conduct and/or (2) his filing a January 2014 EEOC complaint. Id. at 13-15, 42. Plaintiff's complaint appears to set forth a retaliation claim against Craver. He suggests that Craver aided and abetted the discriminatory conduct of her employer and other employees by perpetuating their discriminatory conduct and retaliation through her EEOC response. Id. As noted above, to plead a successful retaliation claim at the pleading stage, a plaintiff must plausibly allege sufficient facts to demonstrate that: (1) he engaged in protected activity, (2) the employer was aware of the protected activity, (3) an adverse employment action occurred, and (4) there is a causal connection

---

[11] The undersigned's prior Report-Recommendation and Order, Dkt. No. 5, and the subsequent adoption by the District Court, Dkt. No. 10, dismissed plaintiff's defamation claim against Craver which was purportedly brought pursuant to Title VII, as set forth in his original complaint. The Report-Recommendation: (1) interpreted plaintiff's claim against Craver as a defamation claim and recommended that it be interpreted as if brought pursuant to New York State Common Law, and (2) dismissed the claims without prejudice, and allowed plaintiff an opportunity to amend in order to provide the "specific defamatory statements that were made." Dkt. No. 5 at 9. In his amended complaint, plaintiff alleges solely that Craver discriminated against him by "distorting the truth" in a "'position statement to Plaintiff's EEOC complaint." Dkt. No. 7 at 42. As noted above, supra at 3, plaintiff did not raise a cause of action for defamation in his amended complaint. Although the amended complaint's statement of facts contains language addressing defamation, the undersigned is not interpreting this language as an attempt to reallege this claim because the amended complaint's statement of facts appears to be unchanged from the original complaint. Because plaintiff has not cured the defects in his defamation claim against Craver, as recommended in the undersigned's October 26, 2015 Report-Recommendation and Order and also has not repleaded this cause of action, the undersigned considers this claim to be abandoned. See, e.g., Dluhous v. Floating & Abandoned Vessel, 162 F.3d 63, 68 (2d Cir. 1998) ("'[I]t is well established that an amended complaint ordinarily supersedes the original, and renders [the original] of no legal effect."); Coleman v. City of Syracuse, 5:09-CV-1391 (GTS/GHL), 2011 WL 13808, at *2 n.3 (N.D.N.Y. Jan. 4, 2011) (noting that the plaintiff did not raise a harassment claim in his amended complaint, and, thus, deeming that claim abandoned).

between the protected conduct and the adverse action, "i.e., that a retaliatory motive played a part in the adverse employment action.'" Burns v. County of Schenectady, 07-CV-0776 (GLS/RFT), 2009 WL 2568546, at *4 (N.D.N.Y. Aug. 19, 2009) (quoting Kessler v. Westchester County Dept. of Soc. Services, 461 F.3d 199, 205-96 (2d Cir. 2006); see also Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458, 470 (2d Cir. 2006); Rumsey v. Northeast Health, Inc., 89 F. Supp. 3d 316, 332 (N.D.N.Y. 2015). A court is also to assess "whether the plaintiff has alleged racial animus with sufficient particularity." McDowell, 788 F. Supp. 2d at 80 (E.D.N.Y. 2011) (citation omitted). A plaintiff's burden at this stage is minimal. See, e.g., Littlejohn, 795 F.3d at 316 (At this stage, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under McDonnell Douglas in the initial phase of a Title VII litigation.").

As for the first prong for assessing a retaliation claim, it is not clear whether the protected conduct plaintiff is referring to is the December 9, 2013 integrity complaint or the January 22, 2014 EEOC complaint. Dkt. No. 7 at 13-15. However, either complaint would amount to protected conduct as long as plaintiff's integrity and/or EEOC complaints were opposing acts of unlawful discrimination, rather than conduct that, while unpleasant, did not amount to discrimination on the basis of a characteristic protected under the NYSHRL. Mi-Kyung Cho v. Young Bin Café, 42 F. Supp. 3d 495, 507 (S.D.N.Y. 2013) (quoting Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 312-13 (N.Y. 2004) ("Protected activity within the meaning of the NYSHRL . . . is conduct that 'oppos[es] or complain[s] about unlawful discrimination.'").

Under the second prong, it is likely that GE Company would be aware of both the

integrity complaint and EEOC complaint, as investigators were assigned to the integrity complaint and because Craver, on behalf of GE Company, responded to the EEOC complaint. Dkt. No. 7 at 13-15; see Kwan v. Andalex Group, LLC, 737 F.3d 834, 844 (2d Cir. 2013) ("[F]or purposes of a prima facie case, a plaintiff may rely on 'general corporate knowledge' of [his or] her protected activity to establish the knowledge prong of the prima facie case.").

As to the third prong, it appears that the adverse action plaintiff is referring to is the language in EEOC position statement. Although plaintiff was eventually terminated in July 2015, it does not appear that plaintiff is alleging that Craver's EEOC response directly resulted in his termination. Indeed, plaintiff alleges the position statement was written in May 2014, and plaintiff was not terminated until July 2015. Dkt. No. 7 at 4. Plaintiff fails to explain if or how the EEOC position statement had a materially adverse impact on the terms and conditions of his employment. "Typical examples of materially adverse actions include termination, demotion, or the material loss of wages, benefits, or job responsibilities." Dansler-Hill v. Rochester Inst. of Tech., 764 F. Supp. 2d 577, 581 (W.D.N.Y. 2011). Actions are materially adverse if they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Hicks v. Baines, 593 F.3d 159, 162 (2d Cir. 2010) (quoting Burlington N. &. Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). Plaintiff has not suggested that an employer's EEOC position statement containing inaccurate or inflammatory claims would dissuade a reasonable employee from making or supporting a charge of discrimination. See Hicks, 593 F.3d at 162. In fact, plaintiff himself was not dissuaded from making charges, as he filed integrity complaints and EEOC complaints

23

after seeing Craver's response.  See Dkt. No. 7 at 48.  Plaintiff does not demonstrate –

nor does it appear that he would be able to demonstrate – that the position statement's

claims prevented him from pursuing his EEOC charge.

Even assuming that plaintiff can demonstrate that the EEOC position statement

amounted to an adverse action – a determination that this Court does not reach at this

time – the causal connection between the protected conduct and alleged adverse

action is difficult to discern.

> [P]roof of a causal connection can be shown either: (1)
> indirectly, by showing that the protected activity was followed
> closely by discriminatory treatment, or through other
> circumstantial evidence such as disparate treatment of
> fellow employees who engaged in similar conduct; or (2)
> directly, through evidence of retaliatory animus directed
> against the plaintiff by the defendant.

Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000).  There is no

"bright line test to define the temporal relationship . . . [that would] establish a causal

relationship[,]" however, "'the causal connection needed for proof of a retaliation claim

can be established indirectly by showing that the protected activity was closely followed

in time by the adverse action.'" Cox v. Quick & Reilly, Inc., 401 F. Supp. 2d 203, 218

(quoting Gorman-Bakos v. Cornell Coop. Extension of Schenectady County, 252 F.3d

545, 554 (2d Cir. 2001) and Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208,

223 (2d Cir. 2001)).

Here, it would appear that, even if the undersigned read the complaint as

attempting to set forth temporal proximity as a causal connection, such an argument

would do little to demonstrate a causal connection.  Although the timing of the adverse

action is relevant in many cases when attempting to prove an indirect causal

24

connection, Cox, 401 F. Supp. 2d at 218, here, looking at the time between the complaint and the response in an attempt to demonstrate a causal connection would appear fruitless. Regardless of how close or far apart in time it was between plaintiff's filing an EEOC complaint and Craver's responding with a position statement, it would seem that Craver, as counsel for GE Company, would need to respond on behalf of GE Company with a position statement even if she had no retaliatory motive. Thus, as it is the content of the position statement that is alleged to be an adverse act, rather than the position statement itself, that plaintiff submitted the EEOC response in December 2013, and Craver submitted her response in May 2014 does little to support this claim.[12] Further, looking at temporal proximity is also not particularly helpful here because the timing of Craver's EEOC position statement likely turned on various factors, such as when GE Company received notice of plaintiff's EEOC complaint as well as the deadline was for Craver to respond.

Very liberally read, plaintiff's complaint suggests retaliatory animus. Gordon, 232 F.3d 111, 117. Plaintiff contends that Craver wrote the mistruthful position statement as part of a company-wide effort of retaliation against plaintiff for his filing complaints

---

[12] There is a time gap of approximately four months between plaintiff's filing of the EEOC complaint and Craver's response. In cases where temporal proximity is more relevant, a time period of four months between the protected conduct and adverse action has been held too far attenuated to demonstrate a causal connection. See, e.g., Dixon v. International Fed'n of Accountants, 416 F. App'x 107, 110 (2d Cir. 2011) (holding that a lapse of four months between protected activity and adverse action, without more, was insufficient evidence to establish a causal connection); Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protect activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'.") (citation omitted). Regardless of the approximately four months between plaintiff's filing of the complaint and Craver's submission of the EEOC position statement, as discussed above, using temporal proximity as a means of indirectly demonstrating a causal connection does support a causal connection, as Craver would have likely been required to submit a response to the EEOC complaint in the same time frame regardless of whether her conduct was discriminatory.

against Bourgeois. Dkt. No. 7 at 19. Specifically, he contends that (1) Craver retaliated against plaintiff and supported Bourgeois because she denied his "solid evidences [sic]" regarding Bourgeois' conduct and (2) that her distortion of the truth was motivated by retaliation and was evidence of "the companywide support" for Bourgeois' harassing conduct. Id. at 12,19. Although plaintiff does not explain why Craver would retaliate against him for filing an EEOC complaint or integrity complaint against defendants Bourgeois, under the liberal pleading standard, plaintiff has at least plausibly argued that Craver's conduct was motivated by discriminatory intent.

Ultimately, even if plaintiff has arguably demonstrated that he was engaged in protected conduct, defendants were aware of that conduct, and that there was a causal connection between the protected conduct and alleged adverse action, Burns, 2009 WL 2568546, at *4, plaintiff has not plausibly pleaded that the EEOC response amounted to an adverse employment action. Accordingly, it is recommended that the claim against defendant Craver for retaliation in violation of the NYSHRL be dismissed, without prejudice, to afford plaintiff an opportunity to plead, with specificity, how Craver's position statement amounted to an adverse action.

In sum, without making any finding as to the merits of plaintiff's claim against these defendants, or whether they would survive a motion to dismiss, it is recommended that plaintiff's claims of NYSHRL violations against GE Company, Bourgeois, Austin, Trant, and Shah survive the Court's section 1915(e) initial review procedure and proceed forward, and that the claim against defendant Craver be dismissed without prejudice and with opportunity to amend, as specified above. It is further recommended that, insofar as plaintiff's sixth cause of action can be read as

26

attempting to set forth NYSHRL claims against defendants Crisman and O'Donnell, such claims be dismissed, without prejudice, as plaintiff fails to allege any facts to support that Crisman or O'Donnell discriminated against him in on the basis of his race in violation of the NYSHRL.[13]  Finally, in his sixth cause of action plaintiff provides that his NYSHRL claim was made against "all defendants," which would seem to include GE Transportation, GE Power & Water, GE Energy Storage (GEMX Technologies, LLC), yet the undersigned observed no factual allegations setting forth NYSHRL violations against GE Transportation, GE Power & Water, GE Energy Storage (GEMX Technologies, LLC).  Thus, the undersigned recommends that the NYSHRL claims, insofar asserted against defendants GE Transportation, GE Power & Water, GE Energy Storage (GEMX Technologies, LLC), also be dismissed, without prejudice and with opportunity to amend to specify the violations of the NYSHRL alleged to have been committed by each GE Transportation, GE Power & Water, and GE Energy Storage (GEMX Technologies, LLC).

### B.  **42 U.S.C. § 1981 Claims**

The undersigned inadvertently failed to address in the "wherefore clause" of the prior Report-Recommendation and Order the claims purportedly brought pursuant to

---

[13]  Despite being advised by the undersigned to provide additional factual support for his claim in his original complaint that defendant Crisman "carried out and/or supported the wrongful acts described in this complaint," plaintiff failed to provide such information.  See Dkt. No. 5 at 5.  Similarly, after the undersigned concluded that it was unclear on what basis plaintiff alleged O'Donnell discriminated against him, it was recommended that the claims be dismissed, without prejudice, to afford plaintiff an opportunity to provide this information.  Plaintiff's amended complaint does not provide factual support as to how O'Donnell allegedly violated the NYSHRL.  Id. at 4-5.

The Civil Rights Act of 1991, 42 U.S.C. § 1981(a).[14]  Because 1981 discrimination

claims are analyzed under the same burden-shifting framework as Title VII and ADEA

claims, a separate analysis for each Title VII and Section 1981 claims is not generally

needed.  See, e.g., Azkour v. Haouzi, 11-Civ-5780 (RJS/KNF), 2012 WL 1658349, at *4

(S.D.N.Y. May 11, 2012).  However, because there is no claim for individual liability

under Title VII, an single analysis encompassing Title VII and section 1981 claims does

not suffice, and a separate review of the section 1981 claims against the individual

defendants is necessary.  As the failure to list plaintiff's section 1981 claims against the

individual defendants in the Report-Recommendation's "wherefore clause" and set forth

whether those claims survived review pursuant to 28 U.S.C. § 1915(e) may have been

the reason why plaintiff did not reallege section 1981 claims against the individual

defendants in his amended complaint, an assessment of the claims against the

individual defendants as set forth in the original complaint as part of this review of the

amended complaint is proper.

Plaintiff alleged: (1) "malice defamation and retaliation"[15] against defendants

Craver and Austin, (2) intentional harassment against defendant Bourgeois,

(3) "intentional discrimination" against all defendants, and (4) a claim against the GE

defendants for being an "unequal opportunity employer."  Dkt. No. 1 at 39-41.  "Section

---

[14]  42 U.S.C. § 1981(a) provides,

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

[15]  Section 1981 encompasses retaliation claims.  See CBOCS West, Inc. v. Humphries, 553 U.S. 442, 457 (2008).

1981 sets forth a remedy for employment discrimination that is independent of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq." Ofori-Tenkorang v. American Intern. Grp., Inc., 460 F.3d 296 (2d Cir. 2006).[16] Unlike Title VII, individuals may be held liable under section 1981 in certain situations. See Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 75 (2d Cir. 2000); Patterson v. County of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004). At the pleading stage of a Section 1981 discrimination claim, "the Court does not apply the familiar McDonnell Douglas burden shifting test used to analyze the evidentiary support for discrimination claims, but rather generally assesses the plausibility of the plaintiff's claim based on the facts alleged." McDowell v. North Shore-Long Island Jewish Health Sys., Inc., 788 F. Supp. 2d 78, 81 (E.D.N.Y. 2011). Thus, plaintiff must plausibly allege sufficient facts to demonstrate that: (1) he is a member of a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010).

As discussed above, "[a]n adverse employment action, in the context of a retaliation claim, is one that would likely dissuade a reasonable employee from making or supporting a charge of discrimination." Azkour, 2012 WL 1658349, at *4 (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). "[N]aked assertions of racial motivation will not suffice to state a cause of action" under section 1981. Id.

---

[16] The undersigned does note, however, that plaintiff did reallege his section 1981(a) claims against GE Company in the amended complaint. Thus, in assessing the section 1981(a) claims against GE Company, the undersigned will assess the claim as raised in the amended complaint.

(quoting <u>Boomer v. Bruno</u>, 134 F. Supp. 2d 262, 269 (N.D.N.Y. 2001)).  Instead, a plaintiff must allege specific "events claimed to constitute intentional discrimination as well as the circumstances giving rise to a plausible inference of racially discriminatory intent."  <u>Yusuf v. Vassar College</u>, 35 F.3d 709, 713 (2d Cir. 1994) (citations omitted); <u>Jenkins v. Arcade Bldg. Maintenance</u>, 44 F. Supp. 2d 524, 528 (S.D.N.Y. 1999) ("[f]act-specific allegations of a causal link between the defendant's actions and the plaintiff's race are required.").  "An individual may be held liable under []§ 1981 . . . only if that individual is 'personally involved in the alleged deprivation.'"  <u>Littlejohn</u>, 795 F.3d at 314 (internal quotation marks and citation omitted); <u>Whidbee</u>, 223 F.3d at 75. "'Essential to an action under Section 1981 are allegations that the defendant['s] acts were purposefully discriminatory, and racially motivated.'"  <u>Findlay v. Reynolds Metals Co, Inc.</u>, 82 F. Supp. 2d 27, 40 (N.D.N.Y. 2000) (quoting <u>Albert v. Carovano</u>, 851 F. 2d 561, 571 (2d Cir. 1988).

### 1.  **Age Discrimination under Section 1981**

As a threshold matter, section 1981 does not apply to age discrimination claims. <u>Anderson v. Conboy</u>, 156 F.3d 167, 169-70 (2d Cir. 1998); <u>Bramesco v. Drug Computer Consultants</u>, 834 F. Supp 120, 122 (S.D.N.Y. 1993) (noting that section 1981 does not apply to claims of age discrimination).  Thus, insofar as plaintiff's complaint may be read as alleging age discrimination, such claims may not proceed under this statute. <u>See</u> Dkt. No. 1 at 39-40.  Accordingly, it is recommended that, should the District Judge adopt the Recommendation-Recommendation and Order insofar as it recommends consideration of the section 1981 claims alleged against the individual defendants in

plaintiff's original complaint, such claims be dismissed with prejudice and without opportunity to amend insofar as it improperly attempts to assert a claim for age discrimination pursuant to section 1981.

## 2.  **National Origin Discrimination under Section 1981**

It is well-settled that there is no section 1981 violation for national origin discrimination.  Hooda v. Brookhaven Nat. Lab., 659 F. Supp. 2d 382, 392 (E.D.N.Y. 2009).  However, "[s]ection 1981's conception of 'race' also protects 'identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."  Emmons v. City University of N.Y., 715 F. Supp. 2d 394, 415 (E.D.N.Y. 2010) (quoting St. Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987)).  Although section 1981 does not protect against discrimination "solely on the place of nation of [] origin," St. Francis College, 481 U.S. at 613, "'courts have also recognized that race and national origin discrimination claims may substantially overlap or even be distinguishable depending on the specific facts of a case,' as national origin may be intertwined with racial and ethnic characteristics."  Thomson v. Odyssey House, 14-CV-3857 (MKB), 2015 WL 5561209, at *19 n.23 (E.D.N.Y. Sept. 21, 2015 (quoting Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003)).  Thus, the Second Circuit has urged courts to be cautious: "[w]here the line between national origin discrimination and racial discrimination is difficult to trace, courts have warned that '[a]n attempt to make such a demarcation before both parties have had an opportunity to offer evidence at trial is inappropriate."  Deravin, 335 F.3d at 202 (quoting Bullard v. OMI Georgia, Inc., 640 F.2d 632 (5th Cir. 1981)).  The Second Circuit also

noted that "courts should not attempt to draw overly fine distinctions between race and national origin claims as part of the threshold exhaustion inquiry prior to the full development of a plaintiff's claims, given the potential overlap between the two forms of discrimination, and the 'loose pleading' which is permitted in the EEOC complaint."  Id. (citation omitted).

Plaintiff's section 1981 claims against the individual defendants alleged only claims for national origin discrimination.[17]  In Saint Francis College, the Supreme Court held that, "[i]f [the] respondent on remand can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin . . . he will have made out a case under § 1981."[18] 481 U.S. at 613.  Although plaintiff solely cites national origin discrimination as the basis of his claim, the distinction between "ancestry or ethnic characteristics" and discrimination based on "'place or nation of . . . origin is not a bright one."  Al-Khazraji, 481 U.S. at 641.  Many courts that have reviewed this distinction have concluded that, "assuming . . . that [the] plaintiff can prove he was subject to discrimination of some kind, the question of the nature of the discrimination is a factual one."  Long v. Marubeni America Corp., 406 F. Supp. 2d 285, 289 (S.D.N.Y. 2005) (quoting Rigodon v. Deutsche Bank Sec., Inc., 04-Civ-2548 (GEL), 2004 WL 2471859 (S.D.N.Y. Nov. 1,

---

[17]  Plaintiff's section 1981 claims against GE Company in the amended complaint also allege discrimination based on race and color, in addition to national origin discrimination.  Dkt. No. 7 at 40.

[18]  The undersigned is aware that the Second Circuit has held that section 1981 also prohibits discrimination on the basis of alienage Anderson v. Conboy, 156 F.3d 167, 180 (2d Cir. 1998) cert granted by United Bhd. of Carpenters and Joiners of America v. Anderson, 526 U.S. 1068 (1999), cert dismissed by 527 U.S. 1030 (1999); however, such a claim does not apply here, where plaintiff is a naturalized citizen of the United States.  Dkt. No. 7 at 4.

2004) (additional citations omitted).  The undersigned finds this logic convincing; thus,
the undersigned will review plaintiff's section 1981 claims against the individual
defendants to the extent that he may be alleging discrimination due to his ancestry
and/or ethnic characteristics, rather than solely because of his Chinese national origin.
See Section II(B)(5), infra.; cf. Gomez v. City of New York, 09-Civ-620, 2012 WL
1514868, at *4 (E.D.N.Y. Apr. 30, 2012) (declining to consider the plaintiff's claim for
national origin discrimination as one for racial or ancestry discrimination: "it is not in
dispute whether plaintiff's Dominican ancestry could be grounds for a § 1981 racial
discrimination claim.  The fact is that [the plaintiff], unlike the plaintiff in Al-Khazaji has
not plead a racial discrimination claim.").

Accordingly, keeping in mind the Second Circuit's hesitancy to draw a clear
distinction between race/ethnicity and national origin discrimination claims at the outset,
Deravin, 335 F.3d at 202, combined with the need to afford pro se litigants special
solicitude, the undersigned recommends that a review of plaintiff's national origin
discrimination claims proceed past the initial review stage.


3. **Defamation and Retaliation under section 1981 - Craver and Austin**

The sixth cause of action of plaintiff's original complaint attempted to set forth a
claim of "malice defamation" against defendants Craver and Austin.  Dkt. No. 1 at 40.
Just as with dismissal of the defamation claim pursuant Title VII in the October 2015
Report-Recommendation and Order, there is no cause of action for defamation under
section 1981(a).  Dkt. No. 5 at 9-10, 12.  Defamation is a state tort law claim.  In his
amended complaint, plaintiff failed to cure the defects in his defamation claim against

Craver.  Id. at 12.  Accordingly, insofar as the District Judge adopts the undersigned's Report-Recommendation and Order in order to allow for review of the section 1981 claims against the individual defendants as set forth in plaintiff's original complaint, it is recommended that plaintiff's claim for defamation against Craver and Austin pursuant to section 1981(a) be dismissed with prejudice and with without opportunity to amend.

### (i) Craver - Section 1981 Retaliation

Although the undersigned recommends that plaintiff's defamation cause of action against Craver be dismissed, the amended complaint's sixth cause of action appears to allege a claim for retaliation as well.  The Supreme Court has held that Section 1981 encompasses retaliation claims. CBOCS W., Inc., 553 U.S. at 457. Similar to the retaliation alleged pursuant to the NYSHRL, supra at 21-27, it appears plaintiff is contending that the adverse action is the EEOC position statement containing the alleged distortions.  The analysis for a retaliation claim under section 1981 is the same as that under the NYSHRL.  See, e.g., Schanfield v. Sojitz Corp. of America, 663 F. Supp. 2d 305, 340-41 (S.D.N.Y. 2009) (noting that claims of retaliation under NYSHRL, Title VII, and Section 1981 can be reviewed under the same framework).[19]

---

[19]  In Nassar, the Supreme Court held that 'Title VII retaliation claims must be proved according to traditional principles of but-for causation,' which requires 'proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'  University of Texas Sw. Med. Ctr., __U.S.__, 113 S.Ct. 2517, 2533 (2013).  The Supreme Court and Second Circuit have not yet decided whether the "but for" causation standard set out for Title VII retaliation claims in Nassar change the standard of proof for retaliation claims under Section 1981.  See, e.g., Quarless v. Brooklyn Botanic Garden Corp., No. 11-CV-05684 (CBA/RER), 2014 WL 2767085, at *6 (E.D.N.Y. June 18, 2014) ("Although prior to Nassar § 1981 and Title VII cases were decided under the same standard, e.g. Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004), following Nassar the causation standards in § 1981 and Title VII retaliation standards may differ."); but see Alexander, 957 F. Supp. 2d at 249 (applying Nassar's but-for causation standard to claims for retaliation under section 1981).  Thus, it is unclear whether the "but for" causation standard also applies to claims for retaliation pursuant to section

Thus, the undersigned need not perform a separate analysis of plaintiff's claim that Craver retaliated against him in response to his filing an EEOC complaint by submitting the position statement, as that claim was reviewed in this Report-Recommendation and Order's discussion of the claim for retaliation against defendant Craver under the NYSHRL.

Accordingly, for the reasons discussed supra at 21-27, it is recommended that plaintiff's claim for retaliation against Craver pursuant to section 1981 be dismissed, without prejudice and with opportunity to amend so that plaintiff may attempt to plausibly plead the (a) specific adverse employment actions he believes he suffered in retaliation for his filing an EEOC complaint, and (b) whether there is a causal connection between the adverse action and his protected activity of filing the EEOC complaint.

### (ii) Austin

In the original complaint's sixth cause of action, plaintiff alleges that Austin defamed him in "the 2014 EMS review by distorting the facts."[20] Dkt. No. 1 at 41. As noted, all claims for defamation against defendant Austin have been dismissed with prejudice. See Dkt. No. 5 at 12. Plaintiff contends that Austin's actions "were based on discrimination based on the national origin and retaliation for Plaintiff's filings with the

---

1981 and NYSHRL. However, this question need not be answered now, as plaintiff is not required to plead a prima facie case at this stage, but instead his claims must be facially plausible and give fair notice to the defendants of the basis of the claim against them.

[20] Plaintiff states that "the annual review was not completed until February 2015." Dkt. No. 7 at 24-25. It appears that the annual review plaintiff is referring to here is the same review as the "2014 EMS review." Id. at 41.

EEOC with the support from whole Company." Dkt. No. 1 at 41. Although plaintiff's defamation claim against Austin has been dismissed, plaintiff's claim here can also be read as contending that, in retaliation for his fining an EEOC complaint, Austin included inaccuracies about his work performance in the 2014 EMS review. Id. Plaintiff's complaint references a March 4, 2015 meeting with Austin, Trant, and Shah wherein plaintiff "provided [Austin, Trant, and Shah] with the particularized reasons and numerous evidences that incontrovertibly showed that Plaintiff's negative review was inaccurate and the PIP improper" insofar as he "proved that all of the tasks done or not done were all gotten Mr. Austin's approval." Id. at 25-26. Plaintiff contends that the only explanation Austin provided for giving plaintiff the negative review was that plaintiff made a typo in a document, "sat away from the table in the group meeting so it meant he did not participate [sic] the activities," and used his smart phone in meetings. Id. at 26. Plaintiff further argues that Austin drafted the false review as a pretext to terminate him. Id. at 27.

As discussed, a plaintiff seeking to plead retaliation in violation of 1981 must plausibly allege: (1) the employee engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. Littlejohn, 795 F.3d at 316. At this stage, "a plaintiff only need plead facts to give 'plausible support' to [the] plaintiff's 'minimal' burden, which is governed by the statute under which she [or her] brings [his or] her claims." Edner v. NYCTA-MTA, __ F. Supp. 3d __, 2015 WL 5561027, at *4 (E.D.N.Y. 2015) (quoting Vega, 801 F.3d at 83-85.

Insofar as plaintiff alleges that the retaliation was due to his filing an EEOC complaint, as noted, such complaints are protected activity. Azkour, 2012 WL 1658349, at *5. Plaintiff states in a conclusory manner that Austin's conduct was "retaliation for Plaintiff's filings with the EEOC with the support from whole company." Dkt. No. 1 at 41. However, this statement does not plausibly demonstrate how Austin was aware of the EEOC complaint. Plaintiff does not allege that he told Austin about the complaint, that Austin was contacted as part of the investigation of the complaint, or that Austin's position in GE Company indicates that he would be aware when EEOC complaints were filed. Plaintiff must plead sufficient facts to plausibly suggest that Austin was aware of the alleged protected conduct. Littejohn, 795 F.3d at 316.

Even assuming plaintiff had sufficiently demonstrated that Austin was aware of the EEOC complaint, under the third prong of the test, plaintiff has failed to demonstrate that the 2014 EMS review was an adverse action, as set forth under section 1981. Plaintiff contends that the adverse employment action was the "untrue EMS review." Dkt. No. 1 at 30. A negative employment review can be considered an adverse action *if* it "leads to an immediate tangible harm or consequence[]." Siddiqi v. New York City Health and Hosp. Corp., 572 F. Supp. 2d 353, 368 (S.D.N.Y. 2008) (citing Valentine v. Standard & Poor's, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999) aff'd 205 F.3d 1327 (2d Cir. 2000)). However, without "any accompanying adverse results . . .[t]he mere fact of a negative evaluation does not constitute discrimination," even if the plaintiff contends that the review is inaccurate. Id. at 367-68 (citations omitted). Further allegations of "reprimands or close monitoring" also fail to amount to an adverse employment action under the statute. Castro v. New York City Bd. of Educ. Personnel,

96-Civ-6314 (MBM), 1998 WL 198004, at *6 (S.D.N.Y. Mar. 12, 1998).

Plaintiff explains that the EMS review was a pretext for termination. Dkt. No. 1 at 26-27, 30. To the extent plaintiff contends that he was terminated as a direct result of the negative review, or that the negative review directly contributed to his termination, the undersigned observes that the negative review was allegedly penned sometime in February 2015, see supra at 24 n.20, and that plaintiff was not terminated until July 2015; thus, the termination is not an immediate consequence of the EMS review. See, e.g., Dixon, 416 F. App'x at 110 (holding a lapse of four months between protected activity and adverse action, without more, was insufficient evidence to establish a causal connection). However, plaintiff's complaint indicates that the review stated that his "failure to demonstrate sufficient improvement during the plan period will result in actions leading up to and including termination." Dkt. No. 7 at 27. Thus, plaintiff may be able to provide a causal connection to the extent that plaintiff may otherwise be able to plausibly plead that the 2014 EMS review somehow lead to an "immediate tangible harm or consequence."

Finally, plaintiff has also failed to plausibly plead a causal connection between the 2014 EMS review and his protected conduct. Plaintiff filed his EEOC complaints in January 2014, May 2014, and August 2015. He received the negative EMS review in February 2015. Accordingly, he cannot demonstrate a causal connection through temporal proximity as the incidents are too far attenuated. See Dixon, 416 F. App'x at 110. Plaintiff has also not plausibly pleaded an inference of discriminatory intent. Thus, plaintiff must demonstrate a causal connection between the adverse action and the protected activity in order to proceed on his section 1981 retaliation claim against

defendant Austin.

Accordingly, it is recommended that plaintiff's section 1981 claim against defendant Austin for retaliation relating to the EMS review be dismissed, without prejudice, and with opportunity to amend to afford plaintiff the chance to set forth sufficient facts to plausibly demonstrate that (1) Austin was aware of the EEOC complaint, and (2) as a result of the negative EMS review, plaintiff suffered immediate adverse employment action, as defined above, and (3) that there was a causal connection between his protected conduct – filing the complaint – and the alleged adverse action – the EMS review.

### 4. **Intentional Discrimination and Retaliation under Section 1981** - **GE Company**

In the fourth cause of action of the amended complaint, labeled "intentional discrimination and retaliation in violation of . . . § 1981," plaintiff alleges that GE Company intentionally discriminated against him on the basis of his "race, color, age,[21] and national origin,[22]" and "retaliated intentionally for long time [sic] with companywide support from whole Company with the purpose of terminating Plaintiff's employment." Dkt. No. 7 at 40-41. The undersigned recognizes that a claim for racial discrimination pursuant to section 1981 differs from one for retaliation. See Choudhury v. Polytechnic

---

[21]  As noted, supra, section 1981 does not create a cause of action for age discrimination. Thus, insofar as plaintiff alleges he was discriminated against by GE Company due to his age in violation of section 1981, it is recommended that such claims be dismissed.

[22] Although plaintiff explicitly alleged claims for race and color discrimination in violation of section 1981 against GE Company in the fourth cause of action in the amended complaint, dkt. no. 7 at 40, in the fifth cause of action in the original complaint, he did not explicitly allege race and/or color discrimination as the basis for his section 1981 discrimination claims against the individual defendants, dkt. no. 1 at 40. See section II(B)(6), infra at 46.

Institute of N.Y., 735 F.2d 38, 44 (2d Cir. 1984) ("The gravamen of a retaliation claim under § 1981 is the allegation of discriminatory treatment because of the filing of a discrimination charge, as distinct from discriminatory treatment on account of race or color in the first instance.")  However, plaintiff's cause of action for "discrimination" does not specify the discriminatory conduct committed by GE Company separate from his claim that he was retaliated against by GE Company employees with company-wide support for such conduct, and arguably that the retaliation was backed by discriminatory intent.  Dkt. No.7 at 40.  Thus, the undersigned interprets the fourth cause of action of the amended complaint insofar as alleged against GE Company as attempting to set forth a claim for retaliation. Id.

Plaintiff does not provide the basis for the alleged retaliation; however, it appears that he is suggesting that GE Company is liable under a theory of respondeat superior for encouraging, or aiding and abetting, the discriminatory conduct of its employees.   "[E]xcept in the case of harassment by nonsupervisory coworkers, the employer is liable for the acts of supervisors under the rule of respondeat superior in both Title VII and § 1981 cases."  Negussey,1997 WL 141679, at *6.  "The facts alleged must give plausible support to the reduced requirements that arise under McDonnell Douglas in the initial phase of a Title VII litigation" and need to support only "a minimal inference of discriminatory motivation."  Littlejohn, 795 F.3d at 311.  Thus, to establish retaliation, "'what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent.'"  Dawson, 2015 WL 5438790, at *2

40

(quoting Littlejohn, 965 F.3d at 311). "A causal connection between the protected activity and the adverse action may be established through evidence of retaliatory animus directed against a plaintiff by the defendant." Azkour, 2012 WL 1658349, at *5 (S.D.N.Y. 2012) (citing Mullins v. City of N.Y., 626 F.3d 47, 53 (2d Cir. 2010)).

It appears plaintiff may be intending to argue that GE Company retaliated against him for filing internal integrity complaints and EEOC complaints. As noted above, filing complaints regarding discriminatory conduct is a protected action, and plaintiff appears to at least implicitly argue[23] that GE Company would be aware of such complaints. Azkour, 2012 WL 1658349, at *5 (filing an EEOC complaint is a protected activity for purposes of a retaliation claim). Plaintiff filed EEOC complaints in January 2014, May 2014, and August 2015, apparently regarding discrimination he faced by his supervisor and other employees due to his race or national origin. Dkt. No. 7 at 48. It is not fully clear the specific acts of retaliation plaintiff is alleging, but it appears from the totality of the complaint that he intends to contend that his ultimate termination was the adverse employment action faced. Plaintiff was suspended in June 2015, and terminated in July 2015. Id. at 35. Plaintiff contends that GE Company created a pretext to terminate him by searching his computer and accusing him of stealing company files that he had "accessed . . . for legitimate and proper purposes" while he was still employed with GE Company, and that he had "kept the data confidential." Id. at 33. Termination is clearly an adverse employment action. See, e.g., Jordan v. Cayuga County, 5:01-CV-1037 (FJS/GLS), 2004 WL 437459, at *6 (N.D.N.Y. Feb. 9,

---

[23] Plaintiff provides that Craver, counsel for GE Company, responded to the EEOC complaints suggesting awareness on the part of GE Company. See Dkt. No. 7 at 14-15, 42.

2004).

Insofar as plaintiff argues that GE Company is liable for the retaliatory conduct of its employees, plaintiff indicates that GE Company either failed to properly investigate and remedy his complaints or encouraged of the employees' conduct. For example, plaintiff alleges that he filed an integrity complaint about defendant Austin in March 2014, was not contacted about the complaint until May 2014, never was contacted by an investigator, as he was promised, and no investigation occurred. See Dkt. No. 7 at 30. Plaintiff further suggests that GE Company's investigation of his integrity complaint regarding Bourgeois was insufficient or improper insofar as the investigator "denied Plaintiff's new allegations and said the allegations of Plaintiff's first complaint with the company were 'UNFOUND' [sic] in two minutes of the conversation." Id. at 14. Finally, he suggests that GE Company either encouraged or otherwise condoned Craver's alleged misconduct of intentionally providing false facts in her EEOC position statement as part of a "companywide" effort to retaliate against plaintiff for filing an EEOC complaint. Id. at 19. As an employer can be liable under section 1981 for the discriminatory conduct of its supervisors, plaintiff may be able to plead liability against GE Company if he is able to prove liability of defendants Bourgeois and Austin.[24]

As the amended complaint's allegations "need only give plausible support to support the reduced prima facie requirements that arise under McDonnell Douglas in

_____

[24] As noted above, it is somewhat unclear to the undersigned whether any of the individual defendants, other than Bourgeois or Austin, were plaintiff's managers or supervisors. Plaintiff provides that Trant was an HR Manager/Employee Resource Manager, Shah was an "Engineering Executive," and Craver was counsel for GE Company or GET. Dkt. No. 7 at 1-2, 42. Thus, as the employer may only be liable for the conduct of its supervisory employees under section 1981, if plaintiff fails to demonstrate that Shah, Trant, or Craver were supervisors, GE Company would not be liable for their conduct even if it were discriminatory, as defined by section 1981.

the initial phase of a Title VII [or section 1981] litigation," <u>Littlejohn</u>, 795 F.3d at 311, it is recommended that plaintiff's section 1981 retaliation claims against GE Company as set forth in the *amended* complaint proceed.  Again, in so recommending, the undersigned provides no opinion whether plaintiff will be able to sufficiently plead a claim for retaliation in violation of section 1981(a) to defeat a properly-filed dispositive motion.

### 5.  Harassment under Section 1981 - GE Company

In the fifth cause of action of the amended complaint, plaintiff states that GE Company harassed him in violation of section 1981 by "denying with the word 'Unfound' the misdemeanor level unlawful harassment, which Plaintiff was bodily injured, carried out on Oct. 25, 2013 by Mr. Bourgeois . . ."  Dkt. No. 7 at 41.  He further pleads that he had been "discriminated continuously over two years intentionally, deliberately and repeatedly in many instances, as though fully set forth herein by managers or agents who were backed by GE Company," and that such conduct "directly caused Plaintiff to suffer mental and emotional harm, anguish, humiliation, even more severely physical harm and endangered Plaintiff's life by the lawful harassment."  <u>Id.</u>  Although difficult to discern, the undersigned reads plaintiff's fifth cause of action as somewhat redundant of his fourth cause of action – an attempt to allege that GE Company is vicariously liable for the conduct of Bourgeois and other employees for either actively encouraging the harassing and discriminatory conduct, or allowing the conduct to continue by failing to take reasonable care to fully investigate and correct its employees' conduct, despite

having knowledge of its occurrence.  <u>See</u> Dkt. No. 7 at 40-41.

"'If [a] supervisor's harassment culminates in a tangible employment action, the employer is strictly liable.'" <u>Rivera v. Rochester Genesee Reg'l Transp. Auth.</u>, 99 F. Supp. 3d 388, 390 (W.D.N.Y. 2015) (quoting <u>Vance v. Ball State Univ.</u>, __ U.S. __, 133 S. Ct. 2434, 2439 (2013).  "'[O]nce an employer has knowledge of a racially combative atmosphere, he has a duty to take reasonable steps to eliminate it.'" <u>Whidbee.</u>, 223 F.4d at 72 (quoting <u>Snell v. Suffolk County</u>, 782 F.2d 1094, 1104 (2d Cir. 1986).  To the extent plaintiff contends that GE Company should be held liable for its non-supervisory employees' harassing conduct, under section 1981, "'[a]n employer will be liable in negligence for a racially . . . hostile work environment created by a victim's co-workers if the employer knows about (or should reasonably know about) that harassment but fails to take appropriately remedial action.'" <u>Whidbee</u>, 223 F.4d at 72 (quoting <u>Richardson v. New York State Dept. of Corr. Services</u>, 180 F.3d 426, 446 (2d Cir. 1999), <u>abrogated on other grounds</u> <u>Kessler v. Westchester County Dep't of Soc. Services</u>, 461 F.3d 199 (2d Cir. 2006)).

Here, plaintiff alleges that he complained about Bourgeois allegedly harassing and discriminatory conduct to GE Company by filing integrity complaints with the GE Company and by complaining to human resources personnel.  Dkt. No. 7 at 9, 11-13. Plaintiff contends that, following the filing of one integrity complaint, he was told that Bourgeois was still his supervisor, but that Bourgeois was not allowed to approach plaintiff without another person present.  <u>Id.</u> at 12.  Plaintiff contends that Bourgeois repeatedly continued to approach him alone, and harass him, and that filing additional integrity complaints did not result in any change in the conduct.  <u>Id.</u> at 14-17, 19-22.

Assuming plaintiff can demonstrate that Bourgeois engaged in harassing conduct on the basis of plaintiff's race/color or national origin, plaintiff has plausibly argued that GE Company was aware of the harassment, but failed to take appropriate steps to remedy the situation. Although the fifth cause of action appears somewhat redundant of the fourth cause of action, at this early stage, the undersigned recommends that it continue forward. Accordingly, it is recommended that plaintiff's claim for harassment against GE Company in violation of section 1981 proceed.

6. **Intentional Discrimination under Section 1981** - **Individual Defendants**

In the fourth cause of action of the original complaint, plaintiff contends that "all defendants" intentionally discriminated against him in violation of section 1981(a). Dkt. No. 1 at 40. The only additional information provided in this cause of action is that "[d]efendants retaliated intentionally for long time [sic] with companywide support from whole Company." Dkt. No. 1 at 41. "The burden for pleading individual liability under § 1981 is not high. A plaintiff need only 'demonstrate some affirmative link to causally connect the actor with the discriminatory action.'" Hooda, 639 F. Supp. 2d at 391 (citing Patterson, 375 F.3d at 229 ("In order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action . . . . [P]ersonal liability under section 1981 must be predicated on the actor's personal involvement.") (internal quotation marks and citation omitted). A supervisor can be considered personally involved in discriminatory conduct under section 1981 by directly participating in the conduct or by "'(1) failing to take

corrective action; (2) creation of a policy or custom fostering the conduct; (3) grossly negligent supervision, or deliberate indifference to the rights of others.'" Villar v. City of New York, 09-CV-7400 (DAB), __ F. Supp. 3d __, 2015 WL 5707125, at *26 (S.D.N.Y. Sept. 29, 2015) (quoting Rolon v. Ward, 345 F. App'x 608, 611 (2d Cir. 2009). Further, "discriminatory intent is a necessary element of a § 1981 claim." Hill v. Rayboy-Braustein, 467 F. Supp. 2d 336, 368 (S.D.N.Y. Nov. 9, 2006) (citation omitted). The Second Circuit "has specifically held that a coworker's direct participation in creating a hostile work environment is sufficient to establish individual liability under § 1981." Jean-Louis v. American Airlines, 08-CV-3898 (FB), 2010 WL 3023943, at *4 (E.D.N.Y. July 30, 2010). Further, the Supreme Court has made clear that section 1981 "prohibits not only racial discrimination but also retaliation against those who oppose it." Univ. of Texas Sw. Med. Ctr. v. Nassar, __, U.S.__, 114 S. Ct. 2517, 2529 (2013).

In the original complaint's fourth cause of action, plaintiff does not provide the specific discriminatory or retaliatory conduct committed by each individual defendant; however, reading the factual section of the complaint together with the other causes of action, plaintiff suggests that the discriminatory conduct that he alleges violated section 1981 would be the same conduct alleged under his NYSHRL and Title VII claims. He alleges that defendant Bourgeois: (1) harassed plaintiff regarding adding his name to plaintiff's patent application, (2) assigned plaintiff inappropriate assignments or too many assignments for the purpose of harassing him and in retaliation for his filing a complaint, (3) issued plaintiff a discipline letter in retaliation for his filing a complaint, and (4) blamed plaintiff for a white employee's failure to complete his work, but did not address the issue with the other employee and lied on the other employee's behalf. Id.

46

at 6, 8-13, 21-22.  He alleges that the inappropriate and/or harassing work assignments and disciplinary letter were done in retaliation for his filing an integrity complaint.  Id. at 13, 18-20, 22.  Plaintiff contends that Bourgeois' conduct regarding the white employee amounted to "favoritism rooted in discrimination against Plaintiff because of his national origin . . . ."  Id. at 6.

Plaintiff alleged that defendant Austin: (1) intentionally excluded him from projects and meetings, (2) assigned him inappropriate projects, (3) intentionally withheld a separation offer, (4) issued and then refused to change a negative or inaccurate review, and (5) treated him differently from white employees by (a) criticizing plaintiff for "non-professional behavior" in handling a conflict with a co-employee, but did not criticize a coworker, Brian S., for his conduct, and (b) failing to address a conflict between plaintiff and Fred, a white coworker, but added to plaintiff's "PIP review" that he had "inclusiveness and behavior problems," but "believed" that Austin did not add this to Fred's PIP review; (c) denying him a remote work request but allowing another employee to work remotely (See Lumhoo v. Home Depot, U.S.A., Inc., 229 F. Supp. 2d 121,140 (E.D.N.Y. 2002), (6) gave him a rating of "development needed" as a form of discrimination due to plaintiff's age and national origin.  Dkt. No. 7 at 7, 25-26, 28-32.  Plaintiff also alleges that Austin concealed the separation offer from him because "[p]laintiff, a Chinese and an old man, could be handled easily, so that he cheated plaintiff by hiding the offer" and that Austin discriminated against him due to "his national origin and age."  Id. at 25.  Plaintiff alleged that Austin treated him differently from his coworkers because "[illegible] [h]ere at GE because [sic] the size and color are different."  Id. at 28.

Next, plaintiff alleged that defendant Trant (1) treated him differently from other employees by denying him flex time, but allowing flex time to a white employee; (2) criticized him for conduct but did not criticize a white employee for the same conduct; and (3) refused to revoke a negative review. Dkt. No. 7 at 23, 28, 31-33. Similarly, he contended that defendant Shah refused to revoke a negative review and criticized him but did not criticize a white employee for the same conduct. Id. at 26, 28. Finally, plaintiff contended that defendant Craver (1) failed to fully investigate his complaint of discrimination by defendant Bourgeois; (2) distorted the truth in her EEOC position statement; and (3) refused to accommodate him by allowing him a transfer after he informed her of Bourgeois' discriminatory and harassing conduct. Id. at 12, 14.

### i. Disparate Treatment

As detailed above, plaintiff alleges that defendants Bourgeois, Trant, Austin, and Shah treated him differently from white or non-Chinese employees either by allowing other employees the ability to work from home, while denying that benefit to plaintiff; assigning him inappropriate or excessive work tasks; or criticizing plaintiff and giving him unjustified negative reviews while failing to do the same other employees who engaged in similar conduct. As been repeatedly explained, at this stage, plaintiff need not establish a prima facie case satisfying the required elements of disparate treatment, but still must plead sufficient facts to give the defendants "fair notice of what the . . . claims are and the grounds upon which it rests." Hennessy v. City of Long Beach, 258 F. Supp. 2d 200, 204 (E.D.N.Y. 2003) (quoting Swierkiewicz, 534 U.S. at 512-13).

Plaintiff contends that at least some of the disparate treatment he faced was due to his national origin.  See Dkt. No. 7 at 6 ¶ 13, 29 ¶ 40, 32-33 ¶ 45.  Specifically relating to Bourgeois, plaintiff contends that Bourgeois discriminated against him by yelling at him for no reason in front of other employees and assigning him inappropriate work.  Id. at 5, 8, 9-11, 14-22.  Plaintiff contends that Bourgeois also treated other Chinese employees less favorably insofar as Bourgeois yelled at Dr. Zhou, a Chinese employee, in a public place; the fact that "[m]ost of the engineers with the national origin if China in GEES held Ph. D. degrees but none of the talent [sic] people held a manager position in GEES"; "[i]n addition to Plaintiff and Dr. Xhou, some of the Chinese engineers felt the same way[,] that they were hired to do the work like a labor or a slave.  They were rarely promoted for their significant achievements."  Id. at 22; see Schwapp v. Town of Avon, 118 F.3d 105, 111-12 (2d Cir. 1997) (holding that incidents of hostility aimed at other minorities can be considered in determining whether there existed a hostile work environment.).

Regarding defendant Austin, plaintiff alleges that he experienced disparate treatment insofar as Austin added to his review that he needed to work on his "inclusiveness and behavior problems," but failed to add these requirement to other employees' reviews, despite the fact that those employees initiated the conflict.  Dkt. No. 7 at 29.  Further, plaintiff contends that Austin "tried hard to find the projects from other groups in order to frustrate Plaintiff with the PIP."  Id.  HE also contends that Austin excluded him from meetings and "separated Plaintiff from the group activities so that Plaintiff did not have vital information on these projects, and was excluded from contributing in meaningful ways."  Id. at 30-31.

49

As noted above, plaintiff alleges that Trant denied him flex time to work from home to care for his ill son, but allowed flex time to a white employee, and criticized him for handling a conflict with a coworker in a "non-professional" manner, but did not criticize the other employee. Dkt. No. 7 at 28-29. Finally, he contends that defendant Shah criticized him but did not criticize a white employee for engaging the same conduct. Id. at 26, 28.

Accordingly, it is recommended that plaintiff's disparate treatment claim against defendants Bourgeois,Trant, Austin, and Shah pursuant to Section 1981 proceed.


### ii.  Work Load

Plaintiff alleges that Bourgeois and Austin assigned him inappropriate work assignments, such as work that was not proper for an mechanical engineer, as well as too many work assignments or giving him too short of a deadline. Dkt. No. 7 at 6-10, 18, 20. The assignment of an excessive workload "as a result of discriminatory intent . . . can be an adverse action . . . ." Vega, 801 F.3d at 88 (citing Feingold, 366 F.3d at 153). Plaintiff pleaded sufficient facts to demonstrate that Bourgeois and Austin intentionally assigned plaintiff excessive work, work with too short of a turn-around time, or work that was intended for a different kind of engineer. See Dkt. No. 7 at 14-22, 29-30. Accordingly, it is recommended that plaintiff's section 1981 claims against defendants Bourgeois and Austin for their conduct of assigning him excessive work assignments as a means of harassment and retaliation proceed.

### iii. Harassment under Section 1981 - Bourgeois

In his original complaint's fourth cause of action, plaintiff pleaded that defendant Bourgeois harassed him in violation of section 1981(a). Dkt. No. 1 at 39-40. Although not specified by plaintiff, it appears that plaintiff is attempting to contend that Bourgeois' harassment created a hostile work environment. See generally Feingold, 366 F.3d at 151 ("[A] rational fact-finder could conclude that [the plaintiff] subjectively experienced a hostile work environment" where he "declare[d] in his affidavit that the hostile treatment took a psychological toll on him, causing him to become depressed, to dread going to work, to seek a transfer, and to lose his desire to socialize with people in general."); Whidbee, 223 F.4d at 69 ("Section 1981 [also] provides a cause of action for race-based employment discrimination based on a hostile work environment."). A hostile work environment claim requires a showing that "(1) the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that a specific basis for imputing the objectionable conduct to the employer." Coleman v. B.G. Sulzle, Inc., 402 F. Supp. 2d 403, 415 at n.4 (N.D.N.Y. 2005). "Incidents that are 'few in number' and that occur 'over a short period of time' may fail to demonstrate hostile work environment." Cox v. Onondaga Sheriff's Dept., 08-CV-387 (NAM/ATB), 2012 WL 1069053, at *12 (N.D.N.Y. Mar. 29, 2012). However, "a single act can create a hostile work environment if it in fact 'work[s] a transformation of the plaintiff's workplace.'" Feingold, 366 F.3d at 149 (quoting Alfano, 294 F.3d at 373.

In the original complaint's fourth cause of action, plaintiff fails to identify upon which protected class Bourgeois' harassment was based. However, a reading of the

facts suggests that plaintiff intends to base his harassment claim against Bourgeois on allege national origin discrimination.  As noted earlier, there is no cause of action for national origin discrimination under section 1981, but as this claim arguably can be read as suggesting discrimination due to his ethnic characteristics or ancestry, it is recommended that the claim not be dismissed on this basis at this time.  See Sections II(B)(2), II(B)(6), supra.

Plaintiff alleges that Bourgeois harassed him by pressuring him to add his name to plaintiff's patent application, giving him a negative EMS review and "dissuad[ing] him from speaking to Human Resources about the review (January 2013), assigning inappropriate tasks, assigning an excessive workload, and yelling at plaintiff "for no reason" in meetings.  Dkt. No. 1 at 5.  Plaintiff alleges that the harassment was retaliation for his filing an EEOC complaint, but also contends that the harassing behavior occurred even before he filed his first complaint in January 2014.  Id. at 5-6, 8-13, 17-18, 19 ¶28.  Plaintiff must also plead facts that show he "was subjected to the hostility because of [his] membership in a protected class."  Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 241 (2d Cir. 2007) (quoting Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999)).  The only connections plaintiff makes to defendant Bourgeois and his race and/or national origin are as follows: that plaintiff had a conversation with a Chinese coworker, Dr. Zhou, who told plaintiff that she had "encountered similar situation several times," and that Bourgeois "treated us as slaves not engineers," that Mr. Bourgeois would "retaliate Plaintiff and other Chinese engineers insanely," that Bourgeois discriminated against a Chinese engineer in the Shanghai office by shouting at him, and that Bourgeois treated him less favorably than white

employees.  Dkt. No. 1 at 5-6, 19, 22.  Although plaintiff offers limited facts to support a

finding of discriminatory intent, he must only allege sufficient facts to suggest a

plausible inference of discriminatory intent and has at least arguably done so here.  Cf.

Dove v. Fordham Univ., 56 F. Supp. 2d 330, 338-39 (S.D.N.Y. 1999) (dismissing

complaint where the plaintiff failed to allege facts alleging racial animus to support a

claim under section 1981).

Accordingly, it is recommended that plaintiff's claim for harassment/hostile work

environment against Bourgeois in violation of Section 1981 proceed because, at this

early stage, he has alleged sufficient facts that at least plausibly support an inference of

discriminatory intent and further development of the facts may suggest that the

discrimination was based on ancestry/ethnic characteristics and not solely national

origin discrimination.


8. **Section 1981 claims against O'Donnell, Crisman, GE Power & Water, GE
   Energy Storage (GEMX Technologies, LLC), and GE Transportation**

Plaintiff's Section 1981 claim as set forth in the fifth cause of action of the

original complaint was alleged against all defendants, presumably intending to include

defendants O'Donnell, Crisman, GE Power & Water, GE Energy Storage (GEMX

Technologies, LLC), and GE Transportation.  See Dkt. No. 1 at 40-41.  However,

plaintiff's complaint failed to allege facts as to how these defendants could have

violated Section 1981.  Accordingly, it is recommended that, insofar as the District

Judge accepts the Report-Recommendation and Order's recommendation to review the

section 1981 claims alleged against the individual defendants as set forth in the original

complaint, such claims against defendants O'Donnell, Crisman, GE Power & Water, GE Energy Storage (GEMX Technologies, LLC), and GE Transportation be dismissed, without prejudice and with opportunity to amend, for failure to allege any facts suggesting these defendants' involvement in discriminating against plaintiff on the basis of his race or national origin in violation of Section 1981.

## 9. "Unequal opportunity employer" - GE Company

The tenth cause of action in plaintiff's amended complaint sets forth a claim pursuant to section 1981 and Title VII against GE Company for being an "unequal opportunity employer."  Dkt. No. 7 at 46. The claim contends that GE Company

> bounds employees to ADR and make most employees feel that GE cannot be sued by the employees who are victims of the unlawful employment practices and acts.  Therefore, GE is actually an unequal opportunity employer with obscurantism for the purpose of selectively supporting some discriminatory acts and/or practices at GE.

Id. at 44.  Plaintiff further alleges, that "to punish the unequal opportunity employer and to deter other companies from doing the same thing, Plaintiff is entitled to the constitutionally-permitted punitive damages award under Title VII and The Civil Rights Act of 1991, 42 U.S. Code § 1981a."  Id.

Plaintiff contends that all GE Company employees are required to sign a document entitled "Acknowledgment Conditions of Employment" which requires employees to "waive the right to pursue Covered claims (as defined in the solutions 'ADR' Procedure) against the Company in Court."  Id. at 35.  Plaintiff contends that this agreement unlawfully and intentionally leads employees to believe that they cannot

commence a federal civil rights claim and "hid[es] the information of 'The Civil Rights Act of 1991, 42 U.S. Code § 1981a' in the ADR." Dkt. No. 1 at 35-36.  It appears that plaintiff concedes that discrimination claims are permitted as "excluded claims" set forth in what appears to be an appendix to this agreement ("Appendix C" ), but that "GE does not want most people [sic] understand it."  Id. at 36.  Plaintiff argues that the ADR requirement in the agreement allows GE Company to "selectively treat[] some employees differently by discrimination, retaliation, harassment and bullying, and termination."  Id.  Within the complaint, plaintiff alleges that he was "reminded that he was bounded by ADR in several instances by GE Counsels and HR managers."  Id. Ultimately, it appears that plaintiff contends that the ADR agreement violates section 1981 and Title VII insofar as it either requires employees to waive their right to a federal trial regarding discrimination claims or uses language to confuse the employee/signor into believing that he cannot bring a federal lawsuit about discrimination concerns that may arise.

The undersigned interprets plaintiff's argument as an unconscionability claim. "[T]he law is clear that 'a mandatory arbitration clause is a reasonable means by which an employer can seek to protect itself from protracted litigation' and is not, by itself, unconscionable."  Molina v. Coca-Cola Enter., Inc., 08-CV-6370, 2009 WL 1606433, at *7 (W.D.N.Y. June 8, 2009) (quoting Gonzalez v. Toscorp Inc., 197 Civ. 8158 (LAP), 1999 WL 595632, at *3 (S.D.N.Y. Aug. 5, 1999).  It appears to the undersigned that plaintiff is alleging that he was subject to an improper and unconscionable arbitration agreement.  Such a claim does not arise under Section 1981 or Title VII.  Instead, it is assessed pursuant to "state- law principles to the issue of contract formation."  Id.

(citing <u>Mehler v. Terminix Int'l Co.</u>, 205 F.3d 44, 48 (2d Cir. 2000). Under New York Law, "'arbitration will not be compelled absent the parties' 'clear, explicit and unequivocal agreement to arbitrate.'" <u>Id.</u> (quoting <u>Manigault v. Macy's East, LLC</u>, 07-4135-CV, 2009 WL 765006, at *2 (2d Cir. 2009) (summary order). Courts in this Circuit have held that parties "who do not 'knowingly' agree to arbitrate Title VII claims cannot be required to submit to arbitration," but that parties who "'voluntarily initiate[] binding arbitration' of their Title VII claims are 'bound by the arbitrator's decision.'" <u>Moorning-Brown v. Bear, Stearns & Co., Inc.</u>, 99-Civ-4130 (JSR/HBP), 2000 WL 16935, at *7 (S.D.N.Y. Jan. 10, 2000) (quoting <u>Prudential Ins. CO. v. Lai</u>, 42 F.3d 1299 (9th Cir. 1994), <u>cert. denied</u> 516 U.S. 812 (1995).

Here, to the extent that plaintiff argues that he was improperly subject to an agreement to arbitrate certain claims regarding discrimination or that the employment agreement is unconscionable because it leads employees to believe they are required to arbitrate such claims, it is recommended that such claims be interpreted as if raised pursuant to New York law, and that these claims be dismissed without prejudice and with opportunity to amend to allow plaintiff to plead sufficient facts as to (1) whether he engaged in ADR regarding the matters underlying this complaint, and (2) whether he is claiming that he did or did not knowingly agree to arbitration.

### C. Harassment - New York State Civil Rights Law § 79-n and New York State Penal Law § 240.25

Plaintiff next raises a claim for "intentional unlawful harassment" against defendant Bourgeois purportedly in violation of New York State Civil Rights Law § 79-n

and New York State Penal Law § 240.25.

Section 79-n "establishes a civil remedy for bias-related violence or intimidation." Spring v. Allegaeny-Limestone Cent. Sch. Dist., ___F. Supp. 3d ___, 2015 W L 5793600, at *13 (W.D.N.Y. Sept. 30, 2015); NEW YORK CIVIL RIGHTS LAW § 79-n (McKinney 2011). This statute allows for civil remedy where a person "intentionally selects a person or property for harm or causes damage to the property or another or causes physical injury or death to another in whole or in substantial part because of a belief or perception regarding the race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation of a person . . . ." NEW YORK CIVIL RIGHTS LAW § 79-n (2).

Plaintiff contends that, in retaliation for his filing a complaint against Bourgeois with the "GE Ombudsman system," Bourgeois harassed plaintiff by "forc[ing] him to amend his patent disclosure to include his name, "caus[ing] Plaintiff bodily injured [sic]" insofar as he "went to the Medical Clinic on [GE's] Schenectady campus," where the nurse "measured Plaintiff's BP [as] 160/110 and diagnosed as [sic] Anxiety Disorder." Dkt. No. 7 at 10, 43. Plaintiff explained that, after resting for two hours, his blood pressure went down to 140/98. Id. at 11. Plaintiff visited his doctor five days after this incident, and the doctor "verified Plaintiff's health condition." Id. at 12. He also visited a "therapist" shortly thereafter. Id. Plaintiff provides that he "was afraid of dying on GE campus under this situation because Plaintiff had many diseases including blood clots (suffered pulmonary embolism hospitalized in 2008 in Beijing, a history of DVI (Deep vein inflammation) hospitalized at least three times in last 25 years and the essential medicine Coumadin (Warfarin) sopped just a month ago then), high blood pressure,

diabetes, Inc." Id. at 10.

Here, plaintiff contends that the harassment lead to his suffering the above-mentioned physical or mental ailments.  However, it is unclear if harassment allegedly resulting in an impact on one's physical and mental health is the kind of bias-related violence or intimidation that section 79-n sought to protect against.  This statute is fairly new, and, as recognized by the Western District of New York, has not yet been analyzed by the courts.  See Spring, 2015 WL 5793600, at *32.  Indeed, it is unknown whether Bourgeois was aware of plaintiff's physical ailments or if such knowledge is even necessary.  Although the statute suggests that the actor cause injury intentionally, it is at least arguable that intentional harassment based on a protected status that resulted in possibly unintentional injury may fall within the confines of this statute.  As plaintiff arguably maybe be able to proceed under this statute, provided he set forth sufficient facts to support this claim, it is recommended that the claim against Bourgeois pursuant to section 79-n proceed.

Plaintiff's claim that defendant Bourgeois violated New York State Penal Law § 240.25 must be dismissed.  Penal Law § 240.25 or harassment in the first degree is a criminal misdemeanor.  This criminal statute is not susceptible to a private cause of action.  See generally Ware v. City University of N.Y., 01-CV-9305 (HB), 2002 WL 1343752, at *3 (S.D.N.Y. June 18, 2002) (dismissing the plaintiff's claim under the Penal Law, noting that litigation of criminal statutes cannot be brought in private actions).  Criminal complaints are under the discretion of prosecutors, and plaintiff himself cannot impose such a claim through this civil action.  Accordingly, insofar as plaintiff's amended complaint sets forth a claim for harassment in violation of New York

State Penal Law § 240.25, it is recommended that this claim be dismissed with prejudice.

III. **Conclusion**[25]

For the aforementioned reasons, it is hereby

**(1) RECOMMENDED**, that plaintiff's claims pursuant to the New York State Human Rights Law in the amended complaint's sixth cause of action alleged against GE Company, Bourgeois, Craver, Austin, Trant, and Shah proceed; and it is further

**(2) RECOMMENDED**, that plaintiff's claims pursuant to the New York State Human Rights Law, insofar as alleged against defendants Crisman, O'Donnell, GE Transportation, GE Power & Water, GE Energy Storage (GEMX Technologies LLC) in the sixth cause of action of the amended complaint be dismissed, without prejudice; and it is further

**(3) RECOMMENDED** that plaintiff's claims pursuant to 42 U.S.C. § 1981 as alleged against the individual defendants in the fourth, fifth and sixth, and seventh cause of action of the **original complaint** be read as if they were repleaded in the amended complaint, and that: (1) pursuant to the fifth cause of

---

[25] Should the District Judge adopt this Report-Recommendation, allowing plaintiff the opportunity to amend the claims as specified, plaintiff is again reminded an amended complaint is intended to completely replace the prior complaint in the action, and thus "renders [any prior complaint] of no legal effect." International Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977), cert. denied sub nom., Vesco & Co., Inc. v. International Controls Corp., 434 U.S. 1014 (1978); see also Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994). Therefore, any amended complaint must include all of the allegations against each of the defendants against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in this action which the defendants must answer.

action of the original complaint: (a) insofar as it alleges claims for age discrimination pursuant to section 1981, such claims be dismissed, with prejudice, and without opportunity to amend; (b) insofar as it alleges claims for disparate treatment against defendants Austin, Bourgeois, Shah, and Trant in violation section 1981, such claims proceed; (c) insofar as it alleges claims against defendants Bourgeois and Austin for harassment and retaliation relating to workload and assignments pursuant to section 1981 proceed; (d) insofar as it alleges a claim against defendant Craver for retaliation in violation of section 1981, such claim dismissed without prejudice, and with opportunity to amend; (e) insofar as it alleges any claims against defendants O'Donnell, Crisman, GE Power & Water, GE Energy Storage (GEMX Technologies, LLC), and GE Transportation, such claims be dismissed, without prejudice, as plaintiff failed to allege any facts to support a claim that these defendants violated section 1981; (2) plaintiff's claim for retaliation in violation of section 1981, as set forth in the sixth cause of action of the amended complaint against defendants Craver and Austin should be dismissed, without prejudice, and with opportunity to amend, as set forth in the Report-Recommendation and Order; and it is further

(4) **RECOMMENDED** that plaintiff's claims for discrimination and retaliation in violation of 42 U.S.C. § 1981 as alleged against GE Company in the fourth cause of action against of the amended complaint be read as a claim for retaliation and that such claim proceed; and it is further

(5) **RECOMMENDED** that plaintiff's claim for harassment in violation of 42

U.S.C. § 1981 alleged against GE Company in the fifth cause of action of the amended complaint proceed; and it is further

(6) **RECOMMENDED** that plaintiff's seventh cause of action in the amended complaint alleged against defendant Bourgeois proceed insofar as it alleges claims pursuant to New York State Civil Rights Law § 79; and it is further

(7) **RECOMMENDED** that plaintiff's seventh cause of action in the amended complaint for harassment against defendant Bourgeois insofar as it purports to allege claims pursuant to the New York State Penal Law § 240.25 be dismissed with prejudice and without opportunity to amend; and it is further

(8) **RECOMMENDED** that plaintiff's tenth cause of action in the amended complaint alleged against GE Company purportedly pursuant to Title VII and Section 1981 for being an "unequal opportunity employer" be read as an unconscionability claim brought pursuant to New York State contracts principles, and such claim be dismissed, without prejudice, and with opportunity for plaintiff to amend this claim to explain, as discussed within the Report-Recommendation and Order, whether he engaged in alternative dispute resolution regarding any of the issues raised in this complaint and/or whether he did not knowingly enter into the arbitration agreement; and it is further

(9) **RECOMMENDED** that, in addition to those claims discussed above, the following claims also survive the Section 1915(e) review: (1) plaintiff's Title VII claims against GE Company for (a) discrimination, (b) retaliation, (c) "unequal terms and conditions of employment, and (d) wrongful termination; and (2)

plaintiff's Age Discrimination in Employment Act claim against GE Company; and it is

(10) **ORDERED** that the Clerk of the Court serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.


Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), plaintiff has **fourteen (14) days** within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED.**


Dated: January 12, 2016
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge