**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

WENCHUN ZHENG, Ph.D.,

                         Plaintiff,

            v.                                 1:15-CV-1232
                                                     (TJM/CFH)

GENERAL ELECTRIC COMPANY,
RICHARD BOURGEOIS, KIMBERLY CRAVER,
DOUGLAS AUSTIN, MINESH SHAH, and
KATIE TRANT,

                         Defendants.

---

**APPEARANCES**:
Wenchun Zheng, Ph.D.
Plaintiff Pro Se
551 Crystalberry Ter.
San Jose, California 95129

**CHRISTIAN F. HUMMEL**
**U.S. Magistrate Judge**

## REPORT-RECOMMENDATION AND ORDER

### I. Procedural History

Plaintiff pro se Wenchun Zheng, Ph.D., commenced this action on October 15,

2015 by the filing of a complaint alleging discrimination, harassment, and retaliation on

the basis of his age, race, color, and national origin, pursuant to Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 200e, eq seq.; the Civil Rights Act of

1991, 42 U.S.C. § 1981(a); and the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. § 621, et seq. Dkt. No. 1 ("Compl."). On January 12, 2016, the undersigned

reviewed plaintiff's amended complaint pursuant to 28 U.S.C. § 1915(e). Dkt. No. 17.

Reference is made to this Court's January 12, 2016 Report-Recommendation and Order ("R&R") for a detailed review of the recommendations. Dkt. No. 7 at 59-62. In a Decision and Order dated February 4, 2016, Senior District Judge Thomas J. McAvoy adopted the Report-Recommendation and Order. Dkt. No. 18. On February 29, 2016, plaintiff filed a second amended complaint. Dkt. No. 22. On April 11, 2016, plaintiff filed a document labeled third amended complaint. Dkt. No. 25. Presently pending before the undersigned is a review of plaintiff's second amended complaint pursuant to 28 U.S.C. § 1915(e).

## II . Initial Review of Second Amended Complaint

In a cover letter to his second amended complaint, plaintiff contends that the

> major changes in the 2nd Amended Complaint includes: a.
> The Defendants TOM O'DONNELL and KRISTEN
> CRISMAN in the Original Complaint are removed; b. All
> claims are re-organized with respect to the laws; c. Rewrote
> the claims under 42 U.S.C. §§ 1981 et seq. and modified the
> claims under NYSHRL and NYSCRL; d. Rewrote the claim
> of 'Unequal Opportunity Employer' in violation of Title VII of
> the Civil Rights Act of 1964, The Civil Rights Act of 1991,
> The Fourteenth Amendment and 42 U.S.C. § 1983 with
> modified description in paragraphs 51 and 52.

Dkt. No. 22-3. Plaintiff also informs the Court that he increased his demand from $12,000,000 to $38,000,000. Id.

In a cover letter to the "third amended complaint," Dkt. No. 25, plaintiff provides, "as you are reviewing the 2nd Amended Complaint, I plan to make further modification on Paragraph 52 as described in the attachment. I appreciate that you review it as it is

modified version." Dkt. No. 25-1.  The cover letter suggests, despite titling the filing as a third amended complaint, plaintiff intended the filing to correct or supplement the second amended complaint, rather than supercede it.  See id.  This intent is further made clear on review of plaintiff's "Third Amended Complaint," which contains only pages one and thirty six through thirty eight; a twenty-four page publication from the American Arbitration Association, which plaintiff labels as exhibit 10; and an October 12, 2015 e-mail from James Beyer, counsel for GE Power & Water, to plaintiff, labeled exhibit 11.  Id.  Within the provided pages of the "Third Amended Complaint," the only differences the undersigned can discern from the second amended complaint is that (1) plaintiff changes the title of his attachments, originally calling them references, now referring to them as exhibits, and (2) in paragraph 52, plaintiff adds a claim that the ADR procedure "violates the guideline provided by the American Arbitration Association," apparently set forth in plaintiff's exhibit 10, that "the ADR plan should 'Specify the nature of the claims to be covered, including express reference to employment disputes and/or specific statutory claims such as Title VII and ADEA.'" Dkt. No. 25 at 2-4.  The "Third Amended Complaint" also notes that GE Company made the ADR agreement a condition of employment, and contends that

> [t]his practice violates 29 U.S.C. § 626(c) and (f).  It is also obvious why the Due Process Protocol for Mediation and Arbitration of Statutory Disputes Arising Out of the Employment Relationship developed in 1995 by a special task force 'recognizes the dilemma inherent in the timing of an agreement to mediate and/or arbitrate statutory disputes,' but does not take a position on whether an employer can require a pre-dispute, binding arbitration program as a condition of employment (Exhibit 10).

Id. at 3-4.  Plaintiff also adds that "this kind of employment agreement (or contract) as a condition of employment should not be allowed according to the laws because the waiver is not 'knowing and voluntary.'"  Id. at 4.

The undersigned points out that, generally, when a plaintiff files an amended complaint, it supercedes the previously-filed complaint in its entirety.  International Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977), cert. denied sub nom., Vesco & Co., Inc. v. International Controls Corp., 434 U.S. 1014 (1978).  The Court advised plaintiff of the requirement that an amended complaint need include the allegations against each defendant such that it can stand alone as the sole complaint in this action.  Dkt. Nos. 17 at 59 n.25, 18 at 4-5.  Were the undersigned to read plaintiff's "Third Amended Complaint" as superceding his second amended complaint, no factual allegations would remain in the complaint, and the only named defendants would be GE Company and Kimberly Craver, as all the Court would have to review would be pages one, thirty six through thirty eight and exhibits ten and eleven.  See generally Dkt. No. 25.  In light of the special solicitude due to plaintiff as a pro se litigant, the undersigned will interpret plaintiff's "Third Amended Complaint," Dkt. No. 25, as a supplement to his second amended complaint, to be considered in addition to his second amended complaint, rather than instead of it.  The undersigned will read paragraphs 51 and 52 of the second amended complaint as if they contained the language set forth in paragraphs 51 and 52 of the "Third Amended Complaint," as it appears to be plaintiff's intent to replace these paragraphs, and will consider exhibits ten and eleven of the "Third Amended Complaint" to be exhibits to the second

4

amended complaint.

## A. New York State Human Rights Law

In his second amended complaint, plaintiff repleads his cause of action pursuant to New York State Human Rights Law ("NYSHRL").  Dkt. No. 22 at 48-49.  He raises this claim against GE Company, Bourgeois, Craver, Austin, Trant, and Shah.  Id. at 48. He abandons the NYSHRL claims against Crisman and O'Donnell.  Id.; Dkt. No. 22-3. In the January 2016 Report-Recommendation and Order ("R&R"), the undersigned concluded that plaintiff arguably pleaded a claim pursuant to the NYSHRL against defendants Bourgeois, Austin, Trant, and Shah, but failed to sufficiently plead a violation of the NYSHRL by Crisman, O'Donnell, and Craver.  The January 2016 R&R also determined that it was unclear whether plaintiff was alleging a NYSHRL claim against GE Transportation, GE Power & Water, GE Energy Storage (GEMX Technologies, LLC) because he alleged merely that the NYSHRL claims were brought against "all defendants," without alleging any specifics as to how GE Transportation, GE Power & Water, GE Energy Storage (GEMX Technologies, LLC) violated the NYSHRL. Dkt. No. 17 at 27.  Thus, the undersigned dismissed the NYSHRL claim insofar as it could be read as being raised against GE Transportation, GE Power & Water, GE Energy Storage (GEMX Technologies, LLC), and granted plaintiff the opportunity to amend his NYSHRL claim if he wished to plead specific NYSHRL violations against these defendants.

First, plaintiff's second amended complaint does not set forth specific NYSHRL

violations against GE Transportation, GE Power & Water, GE Energy Storage (GEMX Technologies, LLC), despite being afforded such opportunity. Thus, it is recommended that insofar as the second amended complaint can be read as asserting an NYSHRL claim against these defendants, such claims be dismissed with prejudice. Further, plaintiff has abandoned his claims against Crisman and O'Donnell. Thus, the undersigned must only assess whether plaintiff sufficiently pleads his NYSHRL claim against Craver.

In the January 2016 R&R, the undersigned recommended that plaintiff's NYSHRL retaliation claim against Craver be dismissed without prejudice "to afford plaintiff an opportunity to plead, with specificity, how Craver's position statement amounted to an adverse action." Dkt. No. 17 at 26. In his second amended complaint, plaintiff added two additional sentences to his claim against Craver:

> Not only did her discrimination and retaliation acts violate the Law and the Company's policy but also damaged Plaintiff's career because he lost at least three opportunities of promotion to senior positions within other GE divisions. Her unlawful employment practice initiated the campaign of a series of retaliatory animus and adverse action, and creating the pretext of terminating Plaintiff's employment.

Dkt. No. 22 at 48. With this language, plaintiff suggests that Craver's EEOC response caused him to miss out on three promotions and allowed for a pretext for termination. On balance, it is recommended that plaintiff's NYSHRL claim against defendant Craver proceed. Edner v. NYCTA-MTA, __ F. Supp. 3d __, 2015 WL 5561027, at *4 (E.D.N.Y. Sept. 18, 2015) (quoting Vega, 801 F.3d at 83-85).

Accordingly, it is recommended that plaintiff's NYSHRL claims against Craver

proceed, and that his NYSHRL claims, insofar as they may be read to be brought against GE Transportation, GE Power & Water, GE Energy Storage (GEMX Technologies, LLC) be dismissed with prejudice.   Plaintiff is reminded that, in recommending that this claim proceed, the undersigned is making no determination as to this claim on the merits.

## B.  42 U.S.C. § 1981 Retaliation Claims

### 1.  Craver

In the January 2016 R&R, the undersigned recommended dismissal without prejudice as to plaintiff's section 1981 retaliation claims against defendants Craver and Austin.  Dkt. No. 17 at 35, 39.  As the analysis for an NYSHRL retaliation claim is the same as that for a section 1981 retaliation, Schanfield v. Sojitz Corp. of America, 663 F. Supp. 2d 305, 340-41 (S.D.N.Y. 2009), it is recommended that plaintiff's section 1981 retaliation claims against defendant Craver proceed for the same reasons as set forth in the preceding section reviewing the NYSHRL claim against defendant Craver.

### 2.  Austin

In the January 2016 R&R, the undersigned determined that plaintiff sufficiently pleaded the first prong demonstrating retaliation in violation of section 1981 – participation in a protected activity.  Dkt. No. 17 at 37.  Next, the undersigned concluded that plaintiff did not meet the second prong – that the defendant was aware of the protected activity – because he failed to demonstrate that Austin was aware of the

EEOC complaints.  Id.   As for the third prong, adverse employment action, the undersigned agreed with plaintiff that termination was an adverse employment action, but contended that it was unclear whether plaintiff was arguing that the negative EMS review was the adverse employment action in question or the termination itself.  To the extent that plaintiff's amended complaint might be read as alleging that the EMS review was an adverse action, the January 2016 R&R determined that plaintiff failed to demonstrate that the negative EMS review was an adverse action because he did not allege that it lead to an immediate tangible harm or consequence.  Id. at 37-38.  Thus, the undersigned recommended that plaintiff's amended complaint alleging a section 1981 retaliation claim against defendant Austin be dismissed without prejudice and with opportunity to replead in order to demonstrate (1) a causal connection between the "2014 EMS review"[1] and an immediate tangible harm or consequence, and (2) a causal connection between the 2014 EMS review and his protected conduct because, as his EEOC complaints were filed in January 2014, May 2014, and August 2015, these filings may be "too far attenuated" from his February 2015 negative EMS review.  Id. at 38.  The undersigned observed that the negative EMS review was likely from February 2015, but that plaintiff was not terminated until July 2015.  Id.

Here, in his second amended complaint, plaintiff contends that Austin "knew the Plaintiff's situation when he was hired as the manager."  Dkt. No. 22 at 46.  Although this does not necessarily demonstrate that Austin knew about the EEOC complaints, as

---

[1]  Although plaintiff refers to the 2014 EMS review, as the undersigned noted in the January 2016 R&R, this 2014 EMS review appears to have been completed in February 2015 (Dkt. No. 7 at 24-25, Dkt. No. 17 at 35 n.20).

this language may simply mean, among other things, that Austin knew about plaintiff's problems with Bourgeois generally, given the special solicitude due, the undersigned will proceed through the analysis with the assumption, for the sake of this initial review, that this statement is plaintiff's attempt to argue that Austin had knowledge of the EEOC complaints.

The undersigned also allowed plaintiff an opportunity to amend to plead whether the EMS review lead to an immediate tangible harm or consequence.  Dkt. No. 17 at 37. In the second amended complaint, plaintiff says is that the EMS review was "inaccurate and untrue," that Austin concealed the separation offer from plaintiff, that he was denied a remote work petition, and that Austin harassed plaintiff with inappropriate PIP projects as a pretext to fire him.  Dkt. No. 22 at 46-47.  Plaintiff's second amended complaint, liberally read, suggests that Austin's alleged conduct in his negative EMS review directly caused or contributed to the denial of the remote work petition, and, when combined with the allegedly inappropriate PIP projects, amounted to a pretext for his eventual termination, which occurred in July 2015.  Dkt. No. 22 at 47.   Although brief and lacking in much detail, plaintiff arguably suggests that the negative EMS review, combined with Austin's other conduct of assigning him inappropriate PIP assignments, were all done in an effort to create a pretext to terminate him.

Addressing the causal connection between the 2014 EMS review and his protected conduct, the January 2015 R&R noted that plaintiff filed his EEOC complaints in January 2014, May 2014, and August 2015, yet the "2014 EMS" review was not submitted until February 2015, and termination did not occur until February 2015.

Plaintiff fails to explain why he would not receive the negative review until eleven months after his first EEOC complaint and seven months after his second EEOC complaint, and why he was not fired until July 2015, a year and a half after filing his first EEOC complaint, and ten months after filing his second EEOC complaint. Hexemer v. General Elec. Co., 12-CV-1808, 2015 WL 3948418, at *7 (N.D.N.Y. June 29, 2015) ("While there is no bright line defining when the temporal proximity between protected activity and an adverse employment action is sufficient to give rise to an inference of causation, in general, a temporal gap of less than two months is sufficient to give rise to an inference of causation.").

To the extent plaintiff's second amended complaint can be read as alleging that the negative EMS review, combined with Austin's additional alleged acts collectively served as a basis for the eventual termination, it is arguable that this satisfies plaintiff's minimal burden of demonstrating a causal connection at this stage. Accordingly, it is recommended that plaintiff's section 1981 retaliation claim against defendant Austin proceed.[2]

### C. 1981 Claims - O'Donnell, Crisman, GE Power & Water, GE Energy Storage (GEMX Technologies, LLC), and GE Transportation

Plaintiff provides that all claims against O'Donnell and Crisman are "removed" from his second amended complaint. Dkt No. 22-3. Indeed, plaintiff has not alleged section 1981 violations against O'Donnell and Crisman in his second amended

---

[2] The undersigned again points out to plaintiff that this is not a determination on the merits, and that it should not be taken as any indication that this claim would or would not survive a properly pleaded dispositive motion filed by defendants.

complaint.  Dkt. No. 22 at 43-47.  Thus, the undersigned deems these claims against O'Donnell and Crisman abandoned.  As for GE Power & Water, GE Energy Storage (GEMX Technologies, LLC), and GE Transportation, in the January 2016 R&R, the undersigned noted that plaintiff "fail[ed] to allege any facts suggesting these defendants' involvement in discriminating against plaintiff on the basis of his race or national origin in violation of Section 1981, and gave plaintiff an opportunity to amend should he wish to make such allegations.  Dkt. No. 17 at 54.

Plaintiff has not alleged in his second amended complaint any section 1981 claims against GE Power & Water, GE Energy Storage (GEMX Technologies, LLC), and GE Transportation.  See Dkt. No. 22 at 43-47.  Accordingly, it is recommended that these claims be deemed abandoned.


### D. **Unequal Opportunity Employer - GE Company**

In his amended complaint, plaintiff alleged that GE Company was an "unequal opportunity employer" purportedly pursuant to 42 U.S.C. § 1981 and Title VII insofar as GE Company required its employees, including plaintiff, to sign an acknowledgment agreeing to resolve certain disputes through alternative dispute resolution, waiving their right to pursue such disputes in court.  Dkt. No. 7 at 35, 46.  The undersigned interpreted plaintiff's argument as a state law unconscionability claim.  Dkt. No. 17 at 55.  Further, the undersigned acknowledged that a mandatory arbitration clause, without more, is not unconscionable, and, thus, afforded plaintiff an opportunity to amend this claim in order to plead whether he (1) engaged in ADR regarding the

matters alleged in his complaint, and (2) knowingly and voluntarily agreed to arbitrate. Id. at 56.

In the second amended complaint, plaintiff realleges his "unequal opportunity employer" claim, purportedly pursuant to Title VII, 42 U.S.C. §§ 1981, 1983, and the Fourteenth Amendment to the United States Constitution. Dkt. No. 22 at 51. In this cause of action, plaintiff sets forth largely the same claim as in the amended complaint. He attaches as an exhibit to the second amended complaint a two-page form entitled Acknowledgment Conditions of Employment - All Salaried Offers ("Acknowledgment"). Dkt. No. 22-1. This form is unsigned. Also attached is a thirty-one page document with the cover page reading, SOLUTIONS An Alternative Dispute Resolution Procedure ("Solutions"). Dkt. No. 22-2. Plaintiff highlights a portion of this document indicating that claims covered under the Solutions Procedure include "Employment discrimination and harassment claims, based on, for example, age, race, sex, religion, national origin, veteran status, citizenship, handicap/disability, or other characteristic protected by law[,]" "[r]etaliation claims for legally protected activity and/or for whistleblowing[,]" and "[t]ort claims such as intentional torts, negligence, defamation, invasion of privacy, infliction of emotional distress, etc.[]" Id. at 5-6. Submitted with the document labeled Third Amended Complaint, plaintiff provides a 2006 American Arbitration Association publication entitled "Resolving Employment Disputes A Practical Guide." Dkt. No. 25 at 5.[3] Plaintiff contends that defendants' ADR agreement violates the "guideline" set forth

---

[3] Plaintiff does not provide whether he received this publication from his employer, or if it is a product of his own research for this suit.

by the American Arbitration Association that an ADR agreement should "'[s]pecify the nature of the claims to be covered, including express reference to employment disputes and/or specific statutory claims such as Title VII and ADEA." Id.

First, the undersigned will review whether, and to what extent, plaintiff alleges he engaged in the Solutions agreement. Plaintiff does not provide a signed copy of the Acknowledgment Conditions of Employment, Dkt No. 22-1, but it can be surmised from his complaint that he signed a copy of the Acknowledgment. The Acknowledgment provides, as a condition of employment, that the signatory agrees to

> waive the right to pursue Covered Claims (as defined in the Solutions Procedure) against the Company in Court (bench or jury trial) or on a class basis in Court or arbitration. I agree to accept an arbitrator's award as the final, binding, and exclusive determination of all Covered Claims. I understand that, to the extent any Covered Claim I have is prohibited by applicable statute or regulation from being mandated to arbitration, I will have an option to, but will not be required to, submit my claim to binding arbitration (see Appendix C to the Solutions Procedure for more information). My signature on this form constitutes acknowledgment of my receipt and a review of a copy of and agreement to the Solutions Procedure.

Id. at 1. The Solutions agreement referenced by the Acknowledgment provides that, where claims cannot be resolved informally through discussions with management, human resources, the office of the Ombudsperson, or Company Compliance Representative, they then engage in the Solutions procedure. Id. at 2. As defined therein:

> Solutions is a structured dispute procedure that consists of two internal levels of review followed by, if necessary and applicable, outside mediation (Level III) and arbitration (Level IV). Levels III and IV apply only to Covered Claims,

13

> as defined herein.  The levels of Solutions are in logical
> sequence, and employees must complete each level of the
> process before proceeding to the next level.

Dkt No. 22-2 at 2.  Levels I and II involve a meeting between "an employee and the

management team" wherein the parties "attempt to address the employee's concern.

Where the employee is dissatisfied with the outcome of Levels I and II, he or she may

submit the claim to Level III.  <u>Id.</u>  The Solutions document provides that the following

claims, among others, are subject to the Solutions procedure

> Claims relating to involuntary terminations, such as layoffs
> and discharges (including constructive discharges), notice of
> mass layoffs and/or plant closings;
> Employment discrimination and harassment claims, based
> on, for example, age, race, sex, religion, national origin,
> veteran status, citizenship, handicap/disability, or other
> characteristic protected by law;
> Retaliation claims for legally protected activity and/or for
> whistleblowing;
> Tort claims (such as intentional torts, negligence,
> defamation, invasion of privacy, infliction of emotional
> distress, etc.);

<u>Id.</u> at 5-6.  The Solutions document further provides that claims excluded from Level IV

of the Solutions procedure includes those claims "which, by applicable statute,

regulation or other legal requirement are precluded from mandatory coverage under a

pre-dispute binding arbitration agreement . . ."  <u>Id.</u> at 6.  The document also provides

that it is agreement to arbitrate pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C.

§§ 1-14.  <u>Id.</u> at 10.

Plaintiff indicates in his "Unequal Opportunity Employer" claim that GEES and

GEPW, who he does not name as parties to this particular cause of action,[4] "rejected to continue EEOC proposed mediation basing on their judgement [sic] that Plaintiff, a male of Chinese engineer and a non-native English speaker, cannot take this action against the Defendants[,]" but does not indicate that the "EEOC proposed mediation" was part of the "Solutions" procedure. Dkt. No. 22 at 51. Plaintiff contends that he "followed the ADR procedure of GE Company. However, the HR manager at Level II still distorted or denied the facts, as described in Paragraph 50." Id.

Plaintiff's second amended complaint and attached exhibits suggest that he engaged in, or attempted to engage in mediation with GE Company, but did not engage in alternative dispute resolution. Dkt. No. 22 at 51. Plaintiff contends that "GE failed to comply with the Level II procedure defined by GE ADR policy as described in Paragraph 50[.]" Dkt. No. 25 at 4. Plaintiff further provides that, following the alleged failure to comply with Level II, GE Counsel James R. Byer

> asserted that 'we will move to compel the matter to arbitration under the Solutions Procedure you are bound to follow' and referred Plaintiff a case which was successfully compelled arbitration but not such cases of Dr. Mody and Mr. Thomas that GE was unable to compel to the ADR. The purpose of this message was obvious enough to deprive Plaintiff's right to sue although he didn't know the nature of the claims in this complaint.

Id. Thus, it appears that plaintiff proceeded through Step II of the Solutions process, and either began mediation and did not complete it, or did not engage in mediation at

---

[4] Plaintiff asserts his "unequal opportunity employer" cause of action only against GE Company. Dkt. No. 22 at 51.

Level III.  See Dkt. No. 25 at 29.[5]

Insofar as plaintiff contends that the Solutions agreement violates Title VII, Section 1981, the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983, in the January 2016 R&R, the undersigned concluded the enforceability of an arbitration agreement is reviewed pursuant to state contracts principles.  Dkt. No. 17 at 55-56.  Although plaintiff now also argues that defendants' Solutions ADR agreement violates the Equal Protection Clause of the Fourteenth Amendment, the Fourteenth Amendment equal protection provision applies only to acts of the states. Rendell-Baker v. Kohn, 457 U.S. 830, 837 (1982) ("[T]he Fourteenth Amendment, which prohibits the states from denying federal constitutional rights . . . applies to the acts of the state, not to acts of private persons or entities.").[6]  Further, despite contending that the Solutions agreement violates 42 U.S.C. § 1983, plaintiff does not explain how defendants, in requiring him to sign the Solutions agreement as a condition

---

[5]  Plaintiff does not provide the outcome of the Level II procedure or the specific matters addressed.  Plaintiff also alleges that "GE Company carried out unequal terms and conditions of employment as claimed in the THIRD CAUSE OF ACTION [Unequal terms and conditions of employment in Violation of Title VII of the Civil Rights Act of 1964]."  Id.  Insofar as plaintiff contends that there were unequal terms and conditions of employment, these claims appear duplicitous of those set forth in other causes of action in the complaint.

[6]  The undersigned notes that, even if plaintiff were able to demonstrate that GE Company was a state actor – which the undersigned does not conclude plaintiff could do – plaintiff has also failed to demonstrate that GE Company treated him differently from others similarly situated.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike.").  A perusal of the Solutions agreement reveals that nearly all employees were subject to the terms of the Solutions agreement.  See Dkt. No. 22-2 at 4 ("Covered employees are U.S.-based (or U.S. expatriates working outside the United States) current, or former employees who left the Company after the effective date of Solutions, not represented by a labor union who are or were employed by the company (including any of its subsidiaries or affiliates that have adopted the procedure), as identified by your business or component in Appendix A.").

of employment, violated one of his constitutional rights while acting under the color of state law.  42 U.S.C. § 1983 ("under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."); Patterson v. Coughlin, 761 F.2d 886, 890 (2d Cir. 1985) ("Recovery under 42 U.S.C. § 1983 is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or federal statutory right and, second, that such denial was effected under the color of state law."). He does not contend that GE Company, a private corporation, was engaging in state action.  Thus, plaintiff has not plausibly pleaded a section 1983 claim against any defendant.

Although the Solutions agreement would appear to be governed by the FAA, a review of plaintiff's second amended complaint – much like review of the amended complaint, Dkt. Nos. 17 at 55-56, 18  –  suggests that he is making an unconscionability argument pursuant to state law principles.   Plaintiff's complaint provides that defendants did not inform him "what statutory rights of the Laws related to employment are waived by signing the agreement, neither does GE tell signers to consult attorneys." Dkt. No. 25 at 3.  In assessing whether an agreement is so unconscionable as to be unenforceable, New York courts assess whether the contract is "'so grossly unreasonable or unconscionable in the light of the mores and business practice of the time and place as to be unenforceable [sic] according to its literal terms.'" Ragone, 595 F.3d at 121 (quoting Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1, 10 (1988)).  The undersigned recommends again that plaintiff's "unequal opportunity employer" claim be read as an unconscionability claim pursuant to state contracts principles and that it

proceed.[7]

Accordingly, it is recommended that plaintiff's tenth cause of action in his amended complaint proceed, but that it be interpreted as an unconscionability claim against defendant GE Company pursuant to state contract principles.

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED** that,

(1) Plaintiff's "Third Amended Complaint," Dkt. No. 25, be interpreted as a supplement to plaintiff's second amended complaint, Dkt. No. 22, and that (a) paragraphs 51 and 52 of the "Third Amended Complaint" be read to replace paragraphs 51 and 52 of the second amended complaint, and (b) the exhibits attached to the "Third Amended Complaint" be considered exhibits to the second amended complaint;

(2) Plaintiff's Tenth Cause of Action against GE Company for "Unequal Opportunity Employer" be read as an unconscionability claim against GE Company pursuant to state contracts law, and such claim proceed;

---

[7] Although the undersigned finds, guided by the Second Circuit, that "although enforceability of an arbitration agreement is decided in the first place under the applicable body of state law, Section 2 of the FAA also 'create[s] a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the' statute." Ragone, 595 F.3d at 125; see also Rent-A-Center, Inc. v. Wilbur, 10-CV-1413 (GTS/GHL), 2011 WL 891144, at *3 (N.D.N.Y. Mar. 11, 2011) (quoting Gap Gemini Ernst & Young U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003) (recognizing that the FAA governs enforcability of an arbitration agreement, but noting that before compelling arbitration, "'the district court must first determine two threshold issues that are governed by state rather than federal law; (1)[d]id the parties enter into a contractually valid arbitration agreement; and (2) [i]f so, does the parties' dispute fall within the scope of the arbitration agreement?"). Thus, it should be noted that, if defendants move to compel arbitration, the arbitration agreement may be governed by the FAA. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001) (holding that the FAA encompasses employment contracts, excepting only transportation workers). "Section 2 of the Federal Arbitration Act . . . provides that '[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Dixon v. NBCUniversal Media, LLC, 947 F. Supp. 2d 390, 397 (S.D.N.Y. 2013) (quoting 9 U.S.C. A § 2).

(3) To the extent plaintiff's Second Amended Complaint may be read as alleging claims against GE Transportation, GE Power & Water, and GE Energy Storage (GEMX Technologies, LLC) for (a) violations of the NYSHRL and (b) retaliation in violation of 42 U.S.C. § 1981, such claims be dismissed with prejudice and without opportunity to amend;

(4) Plaintiff's claim against defendant Craver for retaliation in violation of the New York State Human Rights Law proceed;

(5) Plaintiff's claim against defendant Craver for retaliation in violation of 42 U.S.C. § 1981 proceed;

(6) Plaintiff's claim against defendant Austin for retaliation in violation of 42 U.S.C. § 1981 proceed;

(7) Insofar as Plaintiff's Second Amended Complaint may be read as alleging any claims against defendants Tom O'Donnell and Kristen Crisman, such claims be dismissed with prejudice and without opportunity to amend;

(8) In addition to the claims discussed above, the following claims survive the Section 1915(e) initial review, for the reasons stated in this Court's January 12, 2016 Report-Recommendation and Order, Dkt. No. 17, adopted by District Judge McAvoy in his February 4, 2016 Decision and Order, Dkt. No. 18:

(1) plaintiff's Title VII claims against GE Company for (a) discrimination, (b) retaliation, (c) unequal terms and conditions of employment, and (d) wrongful termination;

(2) plaintiff's Age Discrimination in Employment Act claim against GE Company;

(3) plaintiff's claim against defendant Bourgeois pursuant to New York State Civil Rights Law §79;

(4) the following claims in violation of 42 U.S.C. §1981: (a) retaliation and harassment against GE Company, (b) disparate treatment against defendants Austin, Bourgeois, Shah, and Trant; (c) harassment and retaliation relating to workload assignments against Bourgeois and Austin; and

(5) plaintiff's claims pursuant to the New York State Human Rights Law against defendants GE Company, Bourgeois, Austin, Trant, and Shah;

and it is further

**RECOMMENDED** that, if the District Judge adopts this Report-Recommendation and Order, upon entry of the adoption of the Report-Recommendation and Order, defendants or their counsel be required to file a formal response to the second amended complaint as provided for in the Federal Rules of Civil Procedure subsequent to service of process on the defendants, and that the Clerk be ordered to schedule a Rule 16 Conference before the assigned Magistrate Judge; and it is

**ORDERED** that the Clerk of the Court serve a copy of this Report-Recommendation and Order on the parties in accordance with Local Rules. Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), plaintiff has **fourteen (14) days** within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human

Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED.**

Dated: April 21, 2016
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge